NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | : | Civil Action No.: 10-4126 (JAP) |
| OPPORTUNITY COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | MEMORANDUM OPINION |
| | : | AND ORDER |
| PRINCETON HEALTHCARE SYSTEM,| : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

ARPERT, U.S.M.J

**I.  INTRODUCTION**

This matter having come before the Court on a Motion by Plaintiff Equal Employment

Opportunity Commission ("Plaintiff" or "EEOC") to compel discovery [dkt. entry no. 11],

returnable May 16, 2011.  Defendant Princeton Healthcare System ("Defendant" or "PHCS")

filed opposition on May 2, 2011.  Plaintiff filed a reply brief on May 9, 2011.  For the reasons

stated herein, Plaintiff's Motion is granted, in part.

**II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On July 31, 2007, Susan Nydick ("Nydick" or "Charge No. 524-2007-01127") filed a

charge with EEOC alleging sex discrimination based upon her contention that her "request for

[maternity] leave from 06/07/2007 to 09/08/2007 could not be granted" and that "if [she] was not

able to work, [Nydick] would be released from employment effective with the eighth calendar

day out" according to Defendant's Family Medical Leave Act ("FMLA") policy.  *See* Pl.'s Decl.

of Rosemary DiSavino ("DiSavino"), dkt. entry no. 11-1, Ex. B.  On June 29, 2009, EEOC

issued a Determination stating that it was "unable to conclude that the information obtained

establishes a violation with respect to [Nydick's] allegations that she was discriminated against

regarding the basis of sex". *See* Def.'s Opp'n Decl. of William Gibson, Esq. ("Gibson"), dkt. entry no. 13-2, Ex. A at 1.   However, EEOC went on to say that "[a]rising out of the investigation, ...[EEOC informed Defendant] on August 15, 2008 that it would be expanding its investigation to include possible violations of the Americans with Disabilities Act ("ADA")" because "the evidence indicat[ed] that [Defendant's] policy discriminates against a class of individuals covered by the ADA". *Id.* at 2.   In the event that settlement efforts failed, EEOC indicated that it would "inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the EEOC". *Id.* at 3.

On December 1, 2008, Scott Satow ("Satow" or "Charge No. 524-2009-00174" or "Charging Party") filed a charge with EEOC alleging disability discrimination based upon his contention that his request for "leave in order to get treatment for [his] disability" was denied without Defendant "engag[ing] in the interactive process...[and/or] provid[ing] a reasonable accommodation" due to Defendant's FMLA policy and that Satow was disciplined for disability-related absences and "was discharged from employment" thereafter. *See* Pl.'s Decl. of DiSavino, Ex. D-E.

On August 11, 2010, Plaintiff filed a Complaint "under Title I of the ADA of 1990...and Title I of the Civil Rights Act of 1991 ("CRA")...to correct unlawful employment practices based on disability and to provide relief to Satow...and a class of employees and former employees of PHCS...who were covered by the ADA and who were adversely affected by such practices". *See* Pl.'s Compl., dkt. entry no. 1 at 1.   Plaintiff alleges that Defendant "discriminated against [Satow] and a class of employees and former employees covered by the ADA by strictly enforcing blanket leave policies without granting requests for leave as a reasonable accommodation, thereby terminating [Satow] and members of the class". *Id.* at 1-2.   The Court

notes that the Complaint specifies that EEOC is the Plaintiff in this matter and that "Charge No. 524-2007-01127" and "Charge No. 524-2009-00174" were filed with EEOC "more than thirty days prior to the institution" of this lawsuit.  *Id*. at 2-3.  The Court also notes that Satow's EEOC "Charge No." and specific information related to the circumstances surrounding his employment and termination are included within the Complaint while Nydick's EEOC "Charge No." is the only reference to her within the Complaint.  *Id*. at 3-4.

Specifically, Plaintiff alleges that "[s]ince at least January...2006, Defendant has engaged in unlawful practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112".  *Id*. at 3. Despite the fact that "Satow and the class of employees and former employees have disabilities within the meaning of the ADA, 42 U.S.C. § 12102(2), and are qualified individuals with disabilities under the ADA, 42 U.S.C. § 12111(8)" and "sought leave as a reasonable accommodation from Defendant related to their disabilities", Plaintiff alleges that "Defendant has had and continues to have policies that provide for progressive discipline for employees who have absences, that provide that an employee ineligible for leave under the FMLA will be terminated from employment if the employee cannot return to work after seven consecutive calendar days of absence, and that provide that an employee who has exhausted leave under the FMLA and who has not returned to work at the end of such leave will be considered to have voluntarily resigned".  *Id*.  Further, Plaintiff maintains that "Defendant has uniformly applied and continues to uniformly apply its policies, has not and does not engage in the interactive process with qualified individuals with disabilities who request sick leave related to their disabilities, and thus has failed to grant reasonable accommodations...resulting in [Defendant's] termination of Satow and a class of employees and former employees who are covered by the ADA".  *Id*.  "The effect of the complained of policies and practices is to deprive a class of current and former

3

employees covered by the ADA of equal employment opportunities and to otherwise adversely affect their employment because of their status as persons with disabilities". *See* Pl.'s Br., dkt. entry no. 11 at 2.

On January 14, 2011, Plaintiff served Defendant with "Requests for Documents and Interrogatories". *See* Pl. Br.'s at 3. Defendant "provided a written response on February 15, 2011, noting its concerns about the scope and breadth of the document requests, most notably about the time period of documents requested and the relevance and burden of some of Plaintiff's requests". *See* Def.'s Opp'n Br., dkt. entry no. 13 at 2. Nevertheless, Defendant "began producing documents soon after serving this response" and, despite the current dispute, "has to date produced over 5,000 pages of documents...including the files of 48 employees who were denied a leave of absence and sought to return to work or were terminated for violating...Defendant's attendance policy" such that Plaintiff "has identified 7 persons who it claims are members of its class" to date. *Id*. at 2-3.

In an attempt to resolve a dispute regarding certain discovery requests, Plaintiff "notified Defendant of the deficiencies in its initial responses" in a letter dated February 28, 2011 and specifically requested substantive responses to Requests for Production Nos. 1-2 and responses for the period from January 1, 2000 to the present rather than from January 1, 2008 to the present as to all Requests for Production, including Request for Production No. 22. *See* Pl.'s Decl. of DiSavino, Ex. H at 1. On March 11, 2011, Defendant responded to Plaintiff's correspondence and, thereafter, counsel made "good faith attempts on at least two occasions to resolve this issue". *Id*., Ex. I; *see also* Def.'s Opp'n Br. at 3. Defendant notes that "on the question of the [temporal] scope of Plaintiff's requests, ...[despite its] belief that the proper period of relevance for the employee files began in 2008, ...if [Plaintiff's] counsel could explain why specific

4

discovery of materials other than employee files was needed for an earlier period...such might be provided". *See* Def.'s Opp'n Br. at 3. With respect to "information about employees who had been granted leave", Defendant notes its "belief [is] that the burden of collecting and producing this information outweighed any likely benefit". *Id.*

Plaintiff's Requests for Production Nos. 1-2 and 22 seek the following documents:

> 1. Provide the following for each and every employee who requested a leave of absence related to their own medical condition during the relevant time, regardless of whether the request was granted or denied:
>> (i) Personnel and medical files;
>> (ii) Files containing any and all medical reports, correspondence, documents or information relating to or referring to each employee;
>> (iii) All documents relating to, referring to, reviewed as a result of or generated by each employee's request for a leave of absence, including but not limited to all documents which reflect Defendant's effort to engage in the interactive process with each employee;
>> (iv) All documents relating to, referring to or generated in connection with Defendant's efforts to replace the employee.
>
> 2. Provide the following for each and every employee who requested a reasonable accommodation for their disability or medical condition during the relevant time:
>> (i) Personnel and medical files;
>> (ii) Files containing all medical reports, correspondence, documents or information relating to or referring to each employee;
>> (iii) All documents relating to, referring to, reviewed as a result of or generated by each employee's request for a reasonable accommodation, including but not limited to any and all documents which reflect Defendant's effort to engage in the interactive process with each employee;
>> (iv) All documents relating to, referring to or generated in connection with Defendant's efforts to replace the employee, if necessary.
>
> ...
> 22. Provide the following for each and every employee who requested or required more than 7 consecutive days of sick leave during the relevant time:

> (i) Personnel and medical files;
> (ii) Files containing any and all medical reports, correspondence, documents or information relating to or referring to each employee;
> (iii) All documents relating to, referring to, reviewed as a result of or generated by each employee's use of or request for more than 7 consecutive days of sick leave.

*See* Pl.'s Decl. of DiSavino, Ex. F at 4-5, 7.  Plaintiff specified that "the relevant time period" refers to the "period from January 1, 2000 and continuing through the present".  *Id*. at 2.  In response, Defendant stated the following objections:

> 1. Defendant objects to this request on the grounds that it is vague, overbroad and unduly burdensome.  Defendant further objects to this request to the extent that it seeks information protected by the attorney client privilege, the work product privilege doctrine, and/or applicable privileges and immunities.
>
> 2. Defendant objects to this request on the grounds that it is vague, overbroad and unduly burdensome.  Defendant further objects to this request to the extent that it seeks information protected by the attorney client privilege, the work product privilege doctrine, and/or other applicable privileges and immunities.
>
> ...22. Defendant objects to this request the on the grounds that it is vague, overbroad and unduly burdensome.  Defendant further objects to this request to the extent that it seeks information protected by the attorney client privilege, the work product privilege doctrine, and/or other applicable privileges and immunities.  Defendant responds that it will produce the personnel and medical files of each employee who requested more than 7 consecutive days of sick leave during time period of January 1, 2008 until the present.  The use of the term 'medical files' in this response applies only to medical files held in Defendant's capacity as an employer and does not include any medical files which may be held in Defendant's capacity as a medical provider or benefits administrator.

*Id*., Ex. G at 5-6, 13.

The Court conducted a telephone conference call on March 31, 2011 during which these issues were raised by counsel.  Due to continuing and irreconcilable discovery disputes between

the parties, Plaintiff filed the present Motion on April 21, 2011.  *See* dkt. entry no. 11.  The Court

notes that a Discovery Confidentiality Order was entered in this matter on May 19, 2011.  *See*

dkt. entry no. 19.

> **A.**     **Plaintiff's Arguments in Support of the Motion to Compel**
>
> > **1.**     **The Court should grant Plaintiff discovery for the period of January 1, 2000 to the present so that Plaintiff may pursue a remedy for the entire class of harmed parties.**

Initially, Plaintiff maintains that Defendant "is wrong" when "arguing that only

employees who can allege an adverse action taken after January 2008 can belong to the class of

persons for whom Plaintiff could conceivably bring a claim".  *See* Pl.'s Br. at 6.  Plaintiff

contends that Defendant "ignores a plethora of case law...which permits production of pre-charge

discovery in employment discrimination claims".  *Id*.  Further, Plaintiff argues that Defendant

"improperly treats the individual limitations period and the scope of discovery synonymously

and...compounds the error by erroneously and inexplicably disregarding the timing of the Nydick

charge, instead basing its date calculation solely on the filing date of the Satow charge".  *Id*.

> > **(a)**     **The temporal scope of Plaintiff's discovery requests is reasonable under applicable law.**

Citing FED. R. CIV. P. 26(b)(1), *Salamone v. Carter's Retail, Inc.*, 2011 U.S. Dist. LEXIS

8425, at *27-28 (D.N.J. 2011), *Harris v. Public Service Elec. & Gas Co.*, 2007 U.S. Dist. LEXIS

5412, at *5-6 (D.N.J. 2007), *Kresesky v. Panasonic Comm. & Sys. Co.*, 169 F.R.D. 54, 64

(D.N.J. 1996), *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995), *cert. denied*, 515

U.S. 1159 (1995), and *Robbins v. Camden City Bd. of Ed.*, 105 F.R.D. 49, 55 (D.N.J. 1985),

Plaintiff argues that "the Federal Rules of Civil Procedure and the abundance of case law favor

production of pre-charge discovery" because "courts have construed....[discovery] rule[s]

liberally" especially "in Title VII cases, where courts have been cautioned not to impose

7

unnecessary limitations on discovery". *Id*. at 7.  Citing *James v. Newspaper Agency Corp.*, 591 F.2d 579 (10th Cir. 1979), *Lyoch v. Anheuser-Busch Co.*, 164 F.R.D. 62, 67 (E.D. Mo. 1995), *Stevenson v. Gen. Elec. Co.*, 1978 U.S. Dist. LEXIS 15133, at *3 (S.D. Oh. 1978), *Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632 (E.D. Pa. 1977), *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 62 (E.D. Pa. 1979), *Cormier v. PPG Indus.*, 452, F. Supp. 594 (W.D. La. 1978), Plaintiff maintains that "a determination of the permissible temporal scope of discovery is...broadly construed" and "even in cases involving only individual claims of discrimination, courts routinely extend the scope of discovery to a reasonable number of years prior to the liability period". *Id*. at 7-8.  Citing *Robbins*, 105 F.R.D. at 55, *Miller v. Hygrade Food Prods. Corp.*, 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000), *Wilson v. International Flavors & Fragrances, Inc.*, 2010 U.S. Dist. LEXIS 43405 (D.N.J. 2010), *Harris*, 2007 U.S. Dist. LEXIS 5412, at *9-10, *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 159 (D.D.C. 2003), and *Milner*, 73 F.R.D. at 632, Plaintiff further maintains that "courts within the Third Circuit have followed suit" with respect to the permissible temporal scope of discovery. *Id*. at 8.

> **(b)      Plaintiff may seek relief for the entire class of harmed individuals.**

Citing Title VII, 42 U.S.C. § 12117(a), *Gen. Tel. Co., v. EEOC*, 446 U.S. 318, 326-29, 331 (1980), and *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002), Plaintiff contends that it "enjoys a broad grant of statutory authority to pursue pattern-or-practice claims against private entities unencumbered by the same limitations and obstacles faced by private litigants". *Id*. at 9. Citing *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 364 (4th Cir. 1979), *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 462, 468 (6th Cir. 1999), *EEOC v. Shell Oil Co.*, 466 U.S. 54, 69 (1984), *Waffle House*, 534 U.S. at 296, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 347-48 (1977), *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 372-73 (1977), *EEOC v.*

*Sterling Jewelers, Inc.*, 209 U.S. Dist. LEXIS 122102, at *5 (W.D.N.Y. 2009), *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1359-60 (6th Cir. 1975), *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836 (6th Cir. 1994), *EEOC v. Scolari Warehouse Mkts., Inc.*, 488 F. Supp. 2d 1117, 1136 (D. Nev. 2007), *EEOC v. LA Weight Loss*, 509 F. Supp. 2d 527, 535 (D. Md. 2007), *EEOC v. Dial Corp.*, 156 F. Supp. 2d 926, 944, 966-67 (N.D. Ill. 2001), *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1084 (C.D. Ill. 1998), *EEOC v. Rymer Foods, Inc.*, 1989 U.S. Dist. LEXIS 9003, at *4 (N.D. Ill. 1989), Plaintiff maintains that "EEOC class cases are not subject to Rule 23, are not limited to or defined by charging parties' claims, and are not bound by traditional statutes of limitations" such that "numerous courts have concluded that no limitations period applie[s] to EEOC pattern-or-practice actions and the same rationale applies to EEOC's powers under the ADA". *Id*. at 9.  Based on the fact that "EEOC is empowered to seek recovery for the class of persons harmed by Defendant's policy", Plaintiff argues that "the temporal scope of the requested discovery, from January 1, 2000 to the present, is relevant, reasonable and necessary". *Id*. at 9-10.

> **2.**     **The Court should compel Defendant to produce the fundamental, disputed discovery since Defendant cannot show that production would be unduly burdensome.**

Based on its allegation that "Defendant's polices and practices discriminate against a class of disabled employees, including those who request a leave of absence", Plaintiff maintains that "nothing could be more vital than the information sought by document requests 1, 2, and 22" because "review and analysis of the disputed materials is the only means by which Plaintiff can effectively and efficiently determine the identity of class members, prepare the proofs needed to present its case and obtain evidence needed to refute Defendant's defenses". *Id*. at 10.  Plaintiff contends that "these considerations far outweigh any inconvenience, expense or disruption to

Defendant associated with production". *Id*. Plaintiff notes that Defendant "has concentrated its objection on the alleged burdensomeness of production" and "withdrawn its original representation that it would produce documents responsive to document request 22...from January 1, 2008". *Id*. Plaintiff argues that "Defendant's assertion that the inadequacies of its record keeping system complicate its ability to retrieve responsive files should not inure to Defendant's benefit" nor should the "inconvenience" of having to copy "some 500 files onto a disc". *Id*. at 10-11. Plaintiff maintains that a review of its investigative file "strongly suggests that Defendant has...culled through its files and...already retrieved information responsive to a significant portion of requests 1, 2 and 22". *Id*. at 11. Specifically, Defendant "identified persons who requested a leave of absence, stated whether the request was granted, the leave start and end date, the reason for the request, the reason for denial of the request, if applicable, and the employee's termination date...where applicable...for the period covering 2005 through most of 2009" during the investigation. *Id*. Thus, "Defendant's present complaints that it cannot retrieved the requested information are belied by the fact that it has already retrieved at least a portion of the information". *Id*.

Citing FED. R. CIV. P. 26(b)(2)(C)(iii), Plaintiff states that "the relevant factors weigh overwhelmingly in favor of granting [its] motion to compel". *Id*. Plaintiff contends that "weighing the burden of production against the remaining factors...militates in favor of granting [its] motion". *Id*. at 12. "The relevance of the requested information cannot be seriously questioned" because it "concerns the identity", "treatment", and "specifics surrounding" those "persons who may be entitled to relief in this case". *Id*. Plaintiff "needs this information to identify class members and to properly prepare and present its case" and such information contained in Defendant's files "cannot be obtained elsewhere". *Id*. Given that this case includes

10

"two categories of employees" – "those who were accorded a reasonable accommodation and those who were not" – Plaintiff maintains that "the relevance of information concerning those employees who were denied leave is self-evident". *Id*. Separately, "information concerning persons who were granted leave is relevant, if not critical, to Plaintiff's ability to refute Defendant's defenses" as they will "disclose details regarding the amount of leave granted, the position held by individuals permitted leave, the mechanisms for finding replacement personnel, and the cost of replacement personnel" and will therefore "permit Plaintiff to analyze, weigh and refute Defendant's contention that providing leave imposes an undue hardship on its business operations". *Id*. Finally, Plaintiff argues that "the information concerning persons who requested a reasonable accommodation further informs [its] ability to accurately present Defendant's disregard of the requirements of the ADA and to refute Defendant's assertions that its policies and practices are cognizant and compliant with the mandates of law". *Id*.

Plaintiff maintains that "failure to produce the disputed discovery will impair [its] ability to fulfill its statutory obligation to obtain relief for the full class of persons who have been harmed by the challenged policies" because "production...is the only way for Plaintiff to identify individual class members, obtain evidence needed to prove its case and obtain evidence to refute Defendant's defenses". *Id*. at 12-13. If production is not compelled, Plaintiff argues that "Defendant would reap the benefits of its record keeping failures at the expense of the public interest and the rights of the disabled employees who have been harmed by Defendant's unlawful policies and practices". *Id*. at 13.

### B.   Defendant's Arguments in Opposition to the Motion

#### 1.   The class is limited to claims that could have been filed within 300 days of the filing period.

Initially, Defendant maintains that Plaintiff's contention "that is it permitted to seek relief

for an entire class of harmed individuals without regard to any procedural limitations or the date

that the harm occurred" is "overbroad and misleading". *See* Def.'s Opp'n Br. at 3.  Citing *EEOC*

*v. Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647, 659 (E.D. Va. 2008) and *EEOC v.*

*Custom Cos.*, 2004 U.S. Dist. LEXIS 5950, at *10-11 (N.D. Ill. 2004), Defendant argues that

EEOC's "special statutory mandate does not entitle it to expand substantive rights...such as

reviving stale claims that would not otherwise be actionable under Title VII". *Id*. at 3-4.  Citing

Title VII, 42 U.S.C. § 2000e-5(e)(1)-(f)(1), and 42 U.S.C. §2000e-6(a-e), Defendant contends

that "Title VII provides that an alleged victim of employment discrimination must file a charge

with the EEOC not later than 300 days after the alleged unlawful employment practice occurred"

and "if the EEOC determines that the charge has merit, it is authorized to prosecute the case

civilly" in two different ways: "(1) it may file a pattern or practice suit under § 707 of Title VII of

the CRA of 1964; or (2) it may proceed on behalf of the charging party under § 706". *Id*. at 4.

Citing *Burlington Med.*, 536 F. Supp. 2d at 659 and *EEOC v. Optical Cable Corp.*, 169 F. Supp.

2d 539, 546 (W.D. Va. 2001), Defendant maintains that "pattern or practice suits under § 2000e-

6(e) shall be conducted in accordance with the applicable limitations period prescribed in § 706"

because "the only statutory limitations imposed on the EEOC for filing pursuant to § 707 are

administrative procedures in § 706". *Id*.  Citing *EEOC v. Kovacevich "5" Farms*, 2007 U.S.

Dist. LEXIS 32330, at *17 (E.D. Ca. 2007), *Custom Cos.*, 2004 U.S. Dist. LEXIS 5950, at *10-

11, *Burlington Med.*, 536 F. Supp. 2d at 647, *EEOC v. Dial Corp.*, 2002 U.S. Dist. LEXIS 16557

(N.D. Ill. 2002), and *Optical Cable*, 169 F. Supp. 2d at 539, Defendant argues that "contrary to

Plaintiff's suggestion, courts deciding EEOC enforcement actions have held that only those who

could have filed a charge at or after the time a charge was filed by the class representative can be

included in the charge" such that "class membership must be tethered to the earliest underlying

EEOC charge". *Id.* at 4-5.

Citing *EEOC v. Freeman*, 2010 U.S. Dist. LEXIS 41336, at *3-4 (D. Md. 2010), Defendant notes that "district courts have recently held that statutes of limitation are applicable to the EEOC's pattern and practice actions". *Id.* at 5. Specifically, "Section 706(e)(1) clearly bars claims from individuals who failed to timely file charges" and "nothing in the text of Section 706 or 707 suggests that the EEOC can recover for individuals whose claims are otherwise time-barred". *Id.*; *see also Freeman*, 2010 U.S. Dist. LEXIS 41336, at *12-14, 17-19. More directly, citing *EEOC v. Bloomberg*, 2010 U.S. Dist. LEXIS 113789, at *49-50 (S.D.N.Y. 2010), Defendant argues that "[t]he plain language of Section 706(e)(1), which is incorporated into Section 707 via subsection (e), precludes the EEOC from seeking relief for individuals who were not subjected to an unlawful employment practice during the 300 days before the filing of the triggering charge" because although the EEOC "has a vital and important mission, ...it must play on the same field subject to the same rules as individuals". *Id.* at 5-6; *see also Freeman*, 2010 U.S. Dist. LEXIS 41336, at *12-14. Defendant maintains that "[w]here triggering events are identifiable and based on discrete acts, an EEOC enforcement action must adhere to the statute of limitations". *Id.* at 6. Here, given that Plaintiff's "charge is based on an employee being summarily terminated", "receiving progressive discipline", and "failure to engage in interactive process", Defendant argues that "all of these acts constitute discrete acts that occurred on specific dates that are readily identifiable and amenable to a timeliness determination". *Id.*

Noting that Plaintiff believes that "the Nydick charge, rather than the Satow charge, should control the statute of limitations", Defendant maintains that this is "incorrect" because "Nydick alleged gender discrimination...not...discrimination on the basis of disability that is alleged in Plaintiff's Complaint". *Id.* at 6-7. Citing *Custom Cos.*, 2004 U.S. Dist. LEXIS 5950,

at *10-11 for the proposition that "only those who could have filed a charge at or after the time a charge is filed by the class representative can be included in the charge", Defendant contends that "it is class representative Satow whose charge must control [the] statute of limitations for the class members" because "Nydick is not the charging party in the Complaint", "her name does not appear in the Complaint at all", "Nydick is not...a member of the plaintiff class much less a class representative", and Plaintiff "has not even identified her as someone who has a claim against Defendant". *Id*. at 7.  Defendant argues that the cases cited by Plaintiff for the "position that [the EEOC] can seek relief for a class of individuals regardless of a statute of limitations", namely *Gen. Tel. Co. v. EEOC*, 446 U.S. 318 (1980) and *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291-92, 296 (2002), are distinguishable. *Id*.  In *Gen. Tel. Co.*, although "the court's holding provided that the EEOC did not have to comply with the requirements of Rule 23", the "court's decision cannot be viewed as so expansive that it eliminates other procedural safeguards". *Id*.  In *Waffle House*, although "the court held that an agreement to arbitrate between the employer and employee did not bar the EEOC from pursuing victim specific relief in an action alleging violation of the ADA", "there is no arbitration agreement at issue" here and the court's reference to the EEOC as "master of its own case" referred to the "fact that the EEOC can pursue a claim on behalf of an employee even after [an] employee has disavowed [any] desire to seek relief because it is the agency's decision whether public resources should be committed to the recovery of victim specific relief". *Id*. at 7-8.

Defendant also argues that the cases cited by Plaintiff for the position that "EEOC class cases are not subject to Rule 23, are not limited to or defined by the charging parties' claim and are not bound by traditional statutes of limitations", namely *EEOC v. Gen. Elec. Co.*, 532 F.2d 359 (4th Cir. 1976) and *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 453-54, 460-61

(6th Cir. 1999), and are distinguishable with respect to the statute of limitations. *Id.* at 8. Defendant contends that *Gen. Elec. Co.* "stands for the proposition that the EEOC does not need to confine its investigation and/or complaint to the particular discrimination alleged in the charge" but "does not support the argument that the EEOC is not bound by traditional statute of limitations". *Id.* Defendant contends that *Frank's Nursery* stands for the proposition that an employer cannot "contract away the EEOC's right to bring suit because it was not in privity with the EEOC and did not have the same causes of action or interests as the individual employee" but does not absolve "EEOC of its obligations to comply with the statute of limitations". *Id.* at 8-9.

Defendant states that the "only case cited by the EEOC that explicitly provides that the EEOC is not restrained by the statute of limitations when filing an enforcement action is *Occidental Life Ins. v. EEOC*, 432 U.S. 355, 357, 372 (1977)", but that this case "is also distinguishable from this one". *Id.* at 9. In *Occidental*, "the EEOC brought an enforcement suit three years after the employee complained to the EEOC and five months after conciliation efforts failed" and the court held that, contrary to the employer's argument that "the action was time barred based on California's one year statute of limitations", the statute of limitations "was not applicable to the EEOC" because the "defendants would not be deprived of fundamental fairness or subject to surprise or prejudice because [they] would be alerted to the possibility of an enforcement suit within 10 days after the charge was filed". *Id.* Thus, Defendant argues that *Occidental* "concerns the statute of limitations for the EEOC itself (which is not at issue here), and not for members of a purported class represented by the EEOC". *Id.* Defendant maintains that "the EEOC cannot bring claims on behalf of any plaintiffs who were allegedly discriminated against earlier than 300 days before...Satow brought his charge". *Id.* "Even if the Nydick charge is determined to be controlling, the 300 day look back period should not begin until August 15,

2008 (leading to a September 2007 cut off for class members), because it was on that date that the EEOC informed Defendant that it would be expanding its investigation to include possible violations of the ADA". *Id*. at 7.

### 2. The temporal scope of Plaintiff's discovery request is unreasonable.

Citing *Bayer A.G. v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999), Defendant argues that "although the scope of discovery under the Federal Rules is unquestionably broad, the right is not unlimited and may be circumscribed" as "district courts have wide discretion to manage the discovery phase of a case and may deny requests or impose other restrictions". *Id*. at 9-10. Citing FED. R. CIV. P. 26(b)(2), *Salamone v. Carter's Retail, Inc.*, 2009 U.S. Dist. LEXIS 8425, at *8 (D.N.J. 2011), and *Takacs v. Union County*, 2009 U.S. Dist. LEXIS 87632 (D.N.J. 2009), Defendant notes that "the court can deny a discovery request if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, the District Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery". *Id*. at 10.  Citing *EEOC v. Peoplemark, Inc.*, Civ. No. 08-907 (W.D. Mi. 2011), Defendant notes that here "Plaintiff's brief does not even attempt to explain why this information is necessary", "instead relying on distinguishable cases for the incorrect proposition that the EEOC should be treated differently than other parties before the Court". *Id*.

Citing *Bell v. Lockheed Martin Corp.*, 2010 U.S. Dist. LEXIS 62971, at *13, 24-25 (D.N.J. 2010), *Kresefsky v. Panasonic Commc'n and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996), *Harris v. Harley-Davidson Motor Co. Operations*, 2010 U.S. Dist. LEXIS 119311, at *7 (M.D. Pa. 2010), *Carroll v. UPS*, 71 Fed. Appx. 949, 951 (3d Cir. 2003), *General Insurance Co. v.*

*EEOC*, 491 F.2d 133, 136 (9th Cir. 1974), Defendant maintains that "[d]iscovery in Title VII cases is not without limits and must be tailored to the issues involved in the particular case" such that "courts discussing the temporal scope of discovery in a Title VII case have permitted discovery for a reasonable period that predates a plaintiff's claims". *Id*. at 10-11.  In contrast, here "the EEOC's proposed scope of discovery...dat[ing] back 11 years...is an unreasonable time period that predates the permissible claims by 8 years" and is therefore "overbroad and unreasonable...particularly where...Plaintiff has provided no explanation of why such a long period is appropriate". *Id*. at 11.  Further, with respect to several cases cited by Plaintiff – namely, *James v. Newspaper Agency Corp.*, 591 F.2d 579, 582 (10th Cir. 1979), *Stevenson v. General Electric Co.*, 1978 U.S. Dist. LEXIS 15133, at *3-4 (S.D. Oh. 1978), and *McClain v. Mack Trucks*, 1979 U.S. Dist. LEXIS 8040, at *59-61, 63 (E.D. Pa. 1979) – Defendant contends that unlike Plaintiff's requests, discovery requests and subsequent court orders in those cases "did not include employees' personnel files". *Id*.

Defendant notes that it "is willing to discuss providing other discovery from a period before 2008 if Plaintiff can articulate a reason why such is necessary". *Id*.  Absent such a showing, Defendant argues that "Plaintiff has not provided sufficient legal support for its argument that Defendant should be required to [produce]...all personnel files within the last eleven years...and has failed to even attempt to explain why any of these materials are necessary or even relevant to its case". *Id*. at 11-12.  "[T]o the extent Plaintiff's request for employee files are intended to identify potential class members", Defendant maintains that "files related to [its] employment decisions that predate 2008 will not be relevant". *Id*. at 12.

**3.   Document requests 1, 2 and 22 are overbroad and overly burdensome.**

**(a)     Document request 1 is overly burdensome and overly broad.**

Based upon Plaintiff's allegation that Defendant "has failed to grant reasonable accommodations to [the] Charging Party and a class of employees and former employees who are covered by the ADA, resulting in its termination of [the] Charging Party and a class of employees and former employees who are covered by the ADA", Defendant argues that "the class consists of employees who were not granted leaves of absences". *Id*. at 12-13.  With respect to document request no. 1, Defendant notes that same "would require production of files and other information from employees who were granted leave as well as employees who were denied leave" and that "[s]ince 2008, at least 550 PHCS employees have been granted medical leave". *Id*. at 13.  Defendant maintains that "[c]opying, reviewing and producing that many employee files" would be a "significant burden" and that Plaintiff's "justification for requiring information about people who were granted leave...is premature given the burden" of production.  *Id*. Specifically, although "EEOC has only identified 7 individual plaintiffs" and "will likely be entitled to information about employees in comparable position to those plaintiffs", "requesting files for every employee who took a leave...is premature and overbroad".  *Id*.  Further, while Defendant "is willing to provide information about employees who were denied leaves of absence" subject to practical limitations, Defendant maintains that "detailed information about employees who were granted a leave of absence is insufficiently related to the claims in this case to require production".  *Id*.

With respect to practicality, Defendant states that although its "Human Resources department has records of many employees who have requested leaves of absence, ...those records only include those whose requests have come to the attention of the HR department", "were produced by Defendant during the conciliation process", and "are attached to Plaintiff's motion papers as Ex. J".  *Id*.  Defendant maintains that "in order to completely answer this

request, ...[it] would be required to conduct a review of each and every current and former employee's personnel file and interview many, if not all[,] of its employees". *Id*. Defendant notes that it "has over 2,500 current employees and thousands of former employees". *Id*. at 13-14. While it "is willing to produce the files of all employees who its records show were denied a medical leave of absence since the beginning of 2008", Defendant argues that "the burden of requiring...[the above-referenced] inquiry for each of [its] current and former employees more than outweighs any probative value that might be related to this request". *Id*. at 14.

### (b)    Document request 2 is irrelevant to Plaintiff's claims.

With respect to document request no. 2, Defendant notes that same "is only seeking new documents to the extent that employees sought reasonable accommodation other than a leave of absence". *Id*. Based upon EEOC's allegations, Defendant contends that "the contemplated class of employee-plaintiffs includes only those who sought leave as a reasonable accommodation from Defendant related to their disabilities". *Id*. As such, "requests for accommodation other than leave are not sufficiently related to...[Plaintiff's allegations] to merit discovery". *Id*. Further, Defendant states that it "does not maintain centralized records of non-leave accommodation requests" such that "in order to respond to this request, Defendant would need to conduct an exhaustive investigation involving review of all current and former employee files as well as interviewing most, if not all, employees to determine if they ever made an accommodation request". *Id*. at 14-15. Defendant maintains that "[d]ue to the lack of relevance...combined with the [resulting] burden..., Defendant should not be required to respond to document request 2". *Id*. at 15.

### (c)    Document request 22 is overly broad and overly burdensome.

With respect to document request no. 22, Defendant maintains that for the same reasons

set forth above with respect to document request no. 1 this request is "overbroad" as "it seeks information about employees who were granted the sick leave they requested". *Id*. The "records that would allow Defendant to respond to this request are identical to the records it has that would allow it to respond to document request 1 – Defendant has records of employees who were granted leave (580 employees since the beginning of 2008) as well as records of employees who were not granted leave under its then-current policies". *Id*. Defendant notes that "it is impossible for it to know where an employee required sick leave if that employee never requested" sick leave. *Id*. While it "is willing to produce the files of all employees who were denied a medical leave of absence since the beginning of 2008", Defendant argues that the "burden of requiring...[it] to make [the above-referenced] inquiry for each of those current and former employees more than outweighs any probative value that might be related to this request". *Id*. at 15-16.

## III.   DISCUSSION

### A.   Legal Standards

#### 1.   Discovery

Pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence". *See also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). Importantly, pursuant to FED. R. CIV. P. 26(b)(2)(C), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source

20

     that is more convenient, less burdensome, or less expensive;

  (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

  (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

  The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. 1996). Importantly, "Courts have construed this rule liberally, creating a broad vista for discovery". *Takacs v. Union County*, 2009 WL 3048471, at *1 (D.N.J. 2009)(*citing Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Evans v. Employee Benefit Plan*, 2006 WL 1644818, at *4 (D.N.J. 2006); *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006); *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 560 (D.N.J. 1994); *Glenz v. Sharp Electronic Corp.*, 2010 U.S. Dist. LEXIS 69332, at *2-3 (D.N.J. 2010). A broad vista for permissible discovery "holds especially true in Title VII cases, where courts have been cautioned not to impose unnecessary limitations on discovery". *Harris v. Public Serv. Elec. & Gas Co.*, 2007 U.S. Dist. LEXIS 5412, at *5-6 (D.N.J. 2007); *see also Kresefsky v. Panasonic Commc'n and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d. Cir. 1995), *cert. denied*, 515 U.S. 1159 (1995). "Review of all relevant evidence provides each party with a fair opportunity to present an effective case at trial". *Jones*, 238 F.R.D. at 163; *see also Caver*, 192 F.R.D. at 159; *Nestle*

*Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation...[and] either party may compel the other to disgorge whatever facts he has in his possession". *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *see also Unicasa Marketing Group, LLC v. Spinelli*, 2007 U.S. Dist. LEXIS 59704, at *6-7 (D.N.J. 2007); *Kopacz v. Delaware River and Bay Authority*, 225 F.R.D. 494, 497 (D.N.J. 2004).

"Whether certain documents are relevant is viewed in light of the allegations of the complaint, not as to evidentiary admissibility". *Id.*; *see also Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987). Importantly, "the party resisting discovery has the burden of clarifying and explaining its objections to provide support therefor". *Tele-Radio*, 92 F.R.D. at 375; *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (E.D. Pa. 1979); *Nestle Foods*, 135 F.R.D. at 104-105. More specifically, "[t]he party resisting production of discovery bears the burden of establishing lack of relevancy or undue burden", "must demonstrate to the Court that the requested documents either do not come within the broad scope of relevance as defined in Fed. R. Civ. P. 26(b)(1) or else that they are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure", and "must do more than argue that to compile and produce [documents] would be burdensome". *Guiterrez v. Johnson & Johnson, Inc.*, 2002 U.S. Dist. LEXIS 15418, at *22-23 (D.N.J. 2002); *see also Flora v. Hamilton*, 81 F.R.D. 576 (M.D.N.C 1978); *Burke v. New York City Police Department*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987). However, "a discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, the District Court finds

that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery". *Takacs*, 2009 WL 3048471, at *1; *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). "The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry". *Takacs*, 2009 WL 3048471, at *1(*citing Bowers v. National Collegiate Athletic Assoc.*, 2008 WL 1757929, at *4 (D.N.J. 2008)); *see also Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989); *Public Service Group, Inc. v. Philadelphia Elec. Co.*, 130 F.R.D. 543, 551 (D.N.J. 1990).

"In a Title VII case, [the] scope [of discovery] is particularly broad" such that "[i]nformation relevant to an EEOC inquiry is likewise relevant in an individual action...and if the information has potential cogency to the case, the defendant must shoulder the burden". *Milner v. National School of Health Technology*, 73 F.R.D. 628, 632 (E.D. Pa. 1977); *see also Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975); *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1972). "It is well established that discovery of conduct predating the effective date of Title VII is relevant" but "where plaintiffs, or the EEOC, seek discovery running into the past, courts have set limits on the ground of burdensomeness" ranging from three (3) to twelve (12) years. *Id.*; *see also Burns*, 483 F.2d at 306; *Evans v. I.B.E.W.*, 313 F. Supp. 1354, 1360 (N.D. Ga. 1969); *Georgia Power Co. v. EEOC*, 295 F. Supp. 950 (N.D. Ga.), *aff'd*, 412 F.2d 462 (5th Cir. 1969); *EEOC v. Magnetics Division of Spang Industries*, 23 Fed. R. Serv. 2d (Callaghan) 587 (W.D. Pa. 1976); *General Insurance Co. v. EEOC*, 491 F.2d 133 (9th Cir. Wash. 1974); *Stevenson v. Gen. Elec. Co.*, 1978 U.S. Dist. LEXIS 15133, at *3 (S.D. Ohio 1978); *James v. Newspaper Agency Corp.*, 591 F.2d 579 (10th Cir. 1979); *Lyoch v. Anheuser-*

23

*Busch Co.*, 164 F.R.D. 62, 67 (E.D. Mo. 1995); *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 62 (E.D. Pa. 1979); *Cormier v. PPG Indus.*, 452 F. Supp. 594 (W.D. La. 1978); *Robbins v. Camden City Bd. of Ed.*, 105 F.R.D. 49, 55 (D.N.J. 1985); *Miller v. Hygrade Good Prods., Corp.*, 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000); *Wilson v. International Flavors & Fragrances, Inc.*, 2010 U.S. Dist. LEXIS 43405 (D.N.J. 2010); *Harris*, 2007 U.S. Dist. LEXIS 5412, at *9-10; *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 628, 632 (E.D. Pa. 1977).  Importantly, the Court notes that "[c]ases examining the scope of discovery in a Title VII action permit discovery for a time period that predates the plaintiff's claims" (*Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 193-94 (D.N.J. 2010)) and "courts have commonly extended the scope of discovery to a reasonable number of years prior to the liability period of a Title VII lawsuit" (*Gaul v. Zep Mfg. Co.*, 2004 U.S. Dist. LEXIS 1990, at *5 (E.D. Pa. 2004)).  *See also Hughes v. LaSalle Bank, N.A.*, 2004 U.S. Dist. LEXIS 3403 (S.D.N.Y. 2004); *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 656 (D. Kan. 2004); *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 63 (D.N.J. 1985). Further, "[t]he Court notes that discovery seeking information relating to other charges of discrimination which may have been raised against defendant by its employees in the past is, as a general proposition, relevant because the existence of a pattern of discrimination in a job category may well justify an inference that the practices complained of were motivated by improper factors".  *Bell*, 270 F.R.D. at 194; *see also Robbins*, 105 F.R.D. at 58.

### 3.    Requests for Production of Documents

Pursuant to Fed. R. Civ. P. 34,

> (a) In General.  A party may serve on any other party a request within the scope of Rule 26(b):

>> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession,

24

custody, or control:

(A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

(B) any designated tangible things; or

(2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

(b) Procedure.

(1) Contents of the Request.  The request:

(A) must describe with reasonable particularity each item or category of items to be inspected;

(B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts; and

(C) may specify the form or forms in which electronically stored information is to be produced.

(2) Responses and Objections.

(A) Time to Respond.  The party to whom the request is directed must respond in writing within 30 days after being served.  A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

(B) Responding to Each Item.  For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request,

25

including the reasons.

(C) Objections.  An objection to part of a request must specify the part and permit inspection of the rest.

(D) Responding to a Request for Production of Electronically Stored Information.  The response may state an objection to a requested form for producing electronically stored information.  If the responding party objects to a requested form –  or if no form was specified in the request –  the party must state the form or forms it intends to use.

(E) Producing the Documents or Electronically Stored Information.  Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

> (iii) A party need not produce the same electronically stored information in more than one form.

Pursuant to *Armor Screen Corp. v. Storm Catcher, Inc.*, 2009 WL 291160, at *5, 2009 U.S.

Dist. LEXIS 63538, *7-9 (S.D. Fla. 2009),

> the need to balance Rule 34(b)(2)(E)(i)'s legitimate purpose of alleviating a responding party's burden of production while reasonably assuring a requesting party's ability to obtain discoverable documents under Rule 26(b)(1).  Rule 34 is generally designed to facilitate discovery of relevant information by preventing attempts to hide a needle in a haystack by mingling

responsive documents with large numbers of nonresponsive documents.   A producing party fails to meet its Rule 34 obligations by producing a mass of undifferentiated documents for the responding party to inspect.   While Rule 34 does not obligate a producing party to *per se* organize and label usable documents for the requesting party's convenience, a party exercising Rule 34's option to produce records as they are kept in the usual course of business should organize the documents in such a manner that the requesting party may obtain, with reasonable effort, the documents responsive to their requests. …The standard this Court will use in determining what is required will be whether the production allows the requesting party to reasonably determine what documents are responsive to its requests.   If it does, the production complies with Rule 34(b)(2)(E)(I).   If it does not, then the production does not comply.

*See also Williams v. Taser Int'l, Inc.*, 2006 WL 1835437, at *7 (N.D. Ga. 2006).

Pursuant to FED. R. CIV. P. 26(b)(5),

(A) Information Withheld.   When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed –  and to do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

### 4.      EEOC Powers and Limitations

Pursuant to 42 U.S.C. § 12117,

(a) Powers, remedies, and procedures.   The powers, remedies and procedures set forth in sections 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9) shall be the powers, remedies, and procedures this title provides to the [Equal Employment Opportunity] Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in

> violation of any provision of this Act, or regulations promulgated
> under section 106 [42 U.S.C. § 12116] concerning employment.

Under § 706, the EEOC may sue on behalf of one or more persons aggrieved by an unlawful employment practice.  42 U.S.C. § 2000e-5(f)(1).  Under § 707, the EEOC may investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission.  *Id.* at § 2000e-6(a)-(e).  "This authority was transferred, effective March 24, 1974, from the Department of Justice ("DOJ") to the EEOC and must be carried out in accordance with subsection (e) of Section 707".  *EEOC v. Freeman*, 2010 U.S. Dist. LEXIS 41336, at *9-10 (D. Md. 2010); *see also* 42 U.S.C. § 2000e-6(c); *Gen. Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318, 327-28 (1980).  The "Time for filing charges" provision is set forth in subsection (e)(1) of Section 706 and provides:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of th person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. § 2000e-5(e)(1).

"How the Section 706(e)(1) requirement impacts a lawsuit brought by the EEOC,

rather than one brought by an aggrieved individual", is an issue about which courts have issued divergent rulings. *EEOC v. Freeman*, 2010 U.S. Dist. LEXIS 41336, at *11.  In some instances, courts have found that the EEOC is empowered to obtain relief for all class members harmed by a discriminatory policy, irrespective of the date the harm occurred.  *See, e.g., EEOC v. Shell Oil Co.*, 466 U.S. 54, 69 (1984); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296 (2002); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 347-48 (1977); *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 372-73 (1977); *EEOC v. Sterling Jewelers, Inc.*, 2009 U.S. Dist. LEXIS 122102, at *5 (W.D.N.Y. 2009); *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1359-60 (6th Cir. 1975); *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836 (6th Cir. 1994); *EEOC v. Scolari Warehouse Mkts., Inc.*, 488 F. Supp. 2d 1117, 1136 (D. Nev. 2007); *EEOC v. LA Weight Loss*, 509 F. Supp. 2d 527, 535 (D. Md. 2007); *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1084 (C.D. Ill. 1998); *EEOC v. Rymer Foods, Inc.*, 1989 U.S. Dist. LEXIS 9003, at *4 (N.D. Ill. 1989).  In other instances, however, courts have found that "the class of individuals for whom the EEOC can seek relief" is limited "to those individuals who were allegedly subjected to unlawful employment practices during the 300 days…before the filing of the triggering charge".  *EEOC v. Freeman*, 2010 U.S. Dist. LEXIS 41336, at *12-13; *see also, e.g., EEOC v. Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647, 659 (E.D. Va. 2008); *EEOC v. Custom Cos.*, 2004 U.S. Dist. LEXIS 5950, at *10-11 (N.D. Ill. 2004); *EEOC v. Optical Cable Corp.*, 169 F. Supp. 2d 539, 546 (W.D. Va. 2001); *EEOC v. Kovacevich "5" Farms*, 2007 U.S. Dist. LEXIS 32330, at *17 (E.D. Ca. 2007); *EEOC v. Bloomberg*, 2010 U.S. Dist. LEXIS 113789, at *49-51 (S.D.N.Y. 2010); *EEOC v. Kaplan Higher Education Corp.*, Civ. Action No. 10-2882 (N.D. Oh. 2011), dkt. entry no. 26.

###### B.     Plaintiff's Motion

The Court notes that Defendant has not filed a motion to dismiss with respect to any of the claims set forth in Plaintiff's original Complaint (*see* dkt. entry no. 1), including to bar prospective class members or claims based upon Defendant's interpretation of the appropriate application of the statute of limitations in this matter (*see* Def.'s Opp'n Br. at 3-9).  While the Court acknowledges the arguments proffered by both parties, the Court finds that the appropriate vehicle to address Defendant's arguments about the statute of limitations would have been a motion to dismiss prior to the initiation of discovery and/or a motion for summary judgment at the close of discovery.  Here, based upon the fact that discovery has already commenced and the fact that Defendant has yet to file any such motion to dismiss, the Court concludes that the only issue before it is Plaintiff's Motion to compel production of documents and does not find it necessary to address the statute of limitations issue.

Having reviewed Plaintiff's Requests for Production Nos. 1-2 and 22, the Court finds Plaintiff's requests "relevant...[and] reasonably calculated to lead to the discovery of admissible evidence" pursuant to FED. R. CIV. P. 26(b)(1) and given the "broad vista for discovery" afforded to litigants particularly in Title VII matters.  *Takacs*, 2009 WL 3048471, at *1; *see also Tele-Radio*, 92 F.R.D. at 375; *Jones*, 238 F.R.D. at 163; *Milner,* 73 F.R.D. at 632; *Harris*, 2007 U.S. Dist. LEXIS 5412, at *5-6; *Kresefsky*, 169 F.R.D. at 64; *Sempier*, 45 F.3d at 734.  The Court finds that information related to instances in which Defendant both granted and denied leaves of absences, instances where employees requested a reasonable accommodation for their disability or medical condition, and instances where an employee requested or required more than seven (7) consecutive days of sick leave, is relevant in order to provide Plaintiff grounds to accumulate class members, context, background, and possibly rebut a defense by Defendant that it acted

30

appropriately, reasonably, and in accordance with the law.  Given production of this discovery, Plaintiff's case may or may not be bolstered by Defendant's employment practices, policies and patterns.  Further, while Plaintiff's requests may not all be completely on point with the allegations in the Complaint, information "relating to other charges of discrimination which may have been raised against defendant by its employees in the past is, as a general proposition, relevant because the existence of a pattern of discrimination in a job category may well justify an inference that the practices complained of were motivated by improper factors".  *Bell*, 270 F.R.D. at 194; *see also Robbins*, 105 F.R.D. at 58.  The fact that production of these materials may be time-consuming and costly does not exempt Defendant from production.  *Byrd v. PECO Energy Company*, 1999 WL 89711 (E.D. Pa. 1999).  While the Court appreciates that additional time and resources may be required in order to fully respond to Plaintiff's requests, and having "assessed the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues" (*Takacs*, 2009 WL 3048471, at *1), the Court finds that Defendant has failed to sustain its burden of establishing lack of relevance and undue burden and finds that the probative value of production outweighs the burden and/or expense imposed as a consequence thereof.  *Guiterrez*, 2002 U.S. Dist. LEXIS 15418, at *22-23; *Tele-Radio*, 92 F.R.D. at 375.  Further, while the Court acknowledges Defendant's concerns about the confidential nature of some of the requested information, a Discovery Confidentiality Order has been entered in this matter and the Court finds that any sensitive materials will be safeguarded thereunder.  Thus, the Court compels production of all documents responsive to request nos. 1, 2 and 22.

With respect to the temporal scope of this discovery, given the burden placed on Defendant (*see* Def.'s Opp'n Br. at 9-16) and the fact that the current stage of discovery places

31

Plaintiff's request in an abstract timeframe that may or may not yield relevant information, the Court finds that the relevant period should initially be circumscribed to a window of six (6) years from 2004 up to, and including, 2009.   Based upon the results of Defendant's production, Plaintiff may subsequently make a future application for the production of additional information related to the years 2000 through 2003 and 2010.   *See Bell*, 270 F.R.D. at 193-94; *Gaul*, 2004 U.S. Dist. LEXIS 1990, at *5; *Hughes*, 2004 U.S. Dist. LEXIS 3403; *Robbins*, 105 F.R.D. at 63.

## IV.   CONCLUSION AND ORDER

The Court having considered the papers submitted and the opposition thereto, and for the reasons set forth above;

**IT IS** on this 31st day of May, 2011**,**

**ORDERED** that Plaintiff's Motion to compel discovery [dkt. entry. no. 11] is **GRANTED** consistent with the findings set forth above; and it is further

**ORDERED** that Defendant shall produce the discovery set forth by **June 30, 2011**; and it is further

**ORDERED** that the Court will conduct a telephone conference call on **July 11, 2011** at **2:00 p.m.** to be initiated by Plaintiff's counsel.

s/ *Douglas E. Arpert*

**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**