NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : : : | Civil Action No.: 10-4126 (PGS) |
| Plaintiff, | : : | |
| v. | : : | MEMORANDUM OPINION AND ORDER |
| PRINCETON HEALTHCARE SYSTEM, | : : | |
| Defendant. | : : | |
| _____ | : | |

ARPERT, U.S.M.J.

I.      INTRODUCTION

This matter come before the Court on Motion by Defendant Princeton Healthcare System ("Defendant" or "PHCS") for an Order compelling Plaintiff Equal Employment Opportunity Commission ("Plaintiff" or "EEOC") to require individual claimants to complete a form of "fact sheet" served by Defendant [dkt. entry. no. 35], returnable March 19, 2012.  Plaintiff filed opposition on March 5, 2012.  Plaintiff filed a reply brief on March 12, 2012.  For the reasons stated herein, Defendant's Motion is **GRANTED**.

II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 11, 2010, Plaintiff filed a Complaint in which Plaintiff alleges that Defendant "discriminated against [Scott Satow ("Satow")] and a class of employees and former employees covered by the ADA by strictly enforcing blanket leave policies without granting requests for leave as a reasonable accommodation, thereby terminating [Satow] and members of the class".
*See* Pl.'s Compl., dkt. entry no. 1 at 1-2.  Specifically, Plaintiff alleges that "[s]ince at least

January...2006, Defendant has engaged in unlawful practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112". *Id.* at 3.  Despite the fact that "Satow and the class of employees and former employees have disabilities within the meaning of the ADA, 42 U.S.C. § 12102(2), and are qualified individuals with disabilities under the ADA, 42 U.S.C. § 12111(8)" and "sought leave as a reasonable accommodation from Defendant related to their disabilities", Plaintiff alleges that "Defendant has had and continues to have policies that provide for progressive discipline for employees who have absences, that provide that an employee ineligible for leave under the FMLA will be terminated from employment if the employee cannot return to work after seven consecutive calendar days of absence, and that provide that an employee who has exhausted leave under the FMLA and who has not returned to work at the end of such leave will be considered to have voluntarily resigned". *Id.*  Further, Plaintiff maintains that "Defendant has uniformly applied and continues to uniformly apply its policies, has not and does not engage in the interactive process with qualified individuals with disabilities who request sick leave related to their disabilities, and thus has failed to grant reasonable accommodations...resulting in [Defendant's] termination of Satow and a class of employees and former employees who are covered by the ADA". *Id.*  According to Plaintiff, "[t]he effect of the complained of policies and practices is to deprive a class of current and former employees covered by the ADA of equal employment opportunities and to otherwise adversely affect their employment because of their status as persons with disabilities".  *See* Pl.'s Br., dkt. entry no. 11 at 2.

On January 14, 2011, Plaintiff served its initial disclosures and "identified six employees...who were terminated because they were determined ineligible for a leave of absence".  *See* Def.'s Br., dkt. entry no. 35-1 at 1.  Subsequently, "in response to [Defendant's]

First Set of Interrogatories", Plaintiff "identified seven former PHCS employees...who had allegedly been unlawfully terminated by PHCS".  *Id*.  "In an attempt to streamline the discovery process and allow both [Defendant] and [Plaintiff] to evaluate the claims of class members", Defendant notes that during a telephone conference call with the Court in October 2011 it proposed "that the parties agree on [an individual claimant] Fact Sheet ("Fact Sheet") that would be less intrusive and time-consuming than the previously-served interrogatories" and the "Court directed the parties to work toward a mutually acceptable" resolution.  *Id*. at 2.  Defendant maintains that completion of the Fact Sheet "would allow [Defendant] to evaluate the claims of... [each individual claimant] and determine if there is a way to resolve this matter without trial" and, "if any or all of the [individual claimant's] claims cannot be resolved, the Fact Sheet would give [Defendant] a start on the individualized discovery necessary to conduct the several mini-trials...that will be required to fully litigate this case".  *Id*.

Although Defendant "sent a proposed Fact Sheet to...[Plaintiff] in December 2011...and the parties conferred on its contents twice in January 2012", they were "unable to agree on either the Fact Sheet itself or the process the parties would follow to streamline discovery".  *Id*.  During a telephone conference call with the Court "on February 15, 2012, ...[Plaintiff's counsel] stated that [Plaintiff] wanted an opportunity to 'brief the issue'" and the "Court directed [Defendant] to file the instant motion".  *Id*.  Defendant maintains that "[i]n the proposed Fact Sheet, [it] is seeking the following categories of information for each...[individual claimant] who has chosen to bring a discrimination claim":

> -Personal information (name, current and past addresses, social security number, educational background, employment history);

-Information about each...[individual claimant's] claimed disability (including their interactions with [Defendant] and other employers related to that disability);

-Information about each...[individual claimant's] communications with Defendant;

-Information about each...[individual claimant's] medical providers;

-Certain key documents directly relevant to each...[individual claimant's] claims and/or damages, including medical records (only those related to...[each individual claimant's] claimed disability), documents related to...[each individual claimant's] employment at PHCS, and documents related to...[each individual claimant's] subsequent efforts to find employment after he or she stopped working at PHCS; and

-Authorizations from each...[individual claimant] allowing the release of medical records related to...[each individual claimant's] claimed disability, employment records, tax records, and records related to Social Security Disability Claims.

*Id*. at 3; *see also* Def.'s Decl. of Matthew V. DelDuca, Esq. ("DelDuca"), dkt. entry no. 35-2 at Ex. C. Defendant notes that the proposed Fact Sheet at issue in this Motion "differs from the fact sheet sent to [Plaintiff] in December" because "it incorporates several verbal concessions [Defendant] made in an attempt to gain...[Plaintiff's] agreement". *Id*. at 2. Specifically, the current proposed Fact Sheet "seeks information from 2004 on (rather than for the last ten years), does not seek pharmaceutical and insurance records, and emphasizes that it only seeks medical releases from providers likely to have information related to each [individual claimant's] claimed disability". *Id*.

Plaintiff notes that "[d]iscovery is still in the early stages", although "Defendant has provided [Plaintiff] with the personnel and 'leave files' of over fifteen hundred employees"

4

which includes "potential claimants who may have been affected by the policies and practices at issue". *See* Pl.'s Opp'n Br., dkt. entry no. 38 at 1.  As such, Plaintiff "is in the process of using those files to identify claimants and is providing new claimant names to Defendant on a regular basis". *Id*.  To that end and pursuant to Rule 26(e), on February 24, 2012 Plaintiff forwarded an amendment to its initial disclosures "bringing the total of named claimants to 25" and plans "to continue to supplement its disclosures regularly as it continues to identify claimants".  *Id*. Plaintiff "also provided Defendant a description of each claimant's disability and the Bates numbers of relevant portions of each claimant's leave file", "leave files [which] usually contain a medical certification, provided by the treating doctor, which details the nature of the disability and the amount of leave time needed for treatment".  *Id*.  With respect to the pending discovery dispute, Plaintiff maintains that "[g]iven the strength of its proofs, the language of the ADA and corresponding regulations, and the number of potential claimants, [it]...proposed a layered approach to claimant discovery".  *Id*. at 1-2.

Instead, "despite its purported willingness to evaluate and agree to the merits of some claims", Plaintiff contends that "at issue before the Court is whether each claimant will be required to provide Defendant with the following information through...[the proposed] Fact Sheet and direct authorizations":

> (1) personal information, including all addresses, social security numbers, and maiden or other names;
>
> (2) education history post high school;
>
> (3) employment history, since 2004, including dates of employment, occupation and job duties for each employer and salary or wages at each employer;

(4) military service;

(5) a list of all lawsuits that each claimant has been a party to since 2004, as well as the case or claim number for each and the nature of each claim or injury;

(6) detailed information about each claimant's disability, including details about requests for a reasonable accommodation from Defendant or any other employer;

(7) details about all communications with Defendant about the disability and/or request for leave, including the date, type, and substance of each communication;

(8) information about each medical provider the claimant has seen, including dates of and reasons for each visit to a doctor, hospital or healthcare facility since 2004;

(9) copies of all medical records and medical bills since 2004;

(10) all documents related to each claimant's employment with Defendant;

(11) all documents related to each claimant's efforts to find work after termination;

(12) a release permitting Defendant to obtain medical records and medical bills for each claimant since 2004;

(13) a release permitting Defendant to obtain all employment records for each claimant, including Workers' Compensation records and any documents relating to any request for a reasonable accommodation with any employer, since 2004;

(14) a release permitting Defendant to obtain each claimant's complete income tax records since 2004;

(15) a release permitting Defendant to obtain the Social Security file of any claimant who filed a claim for Social Security disability benefits; and

(16) an acknowledgment that each claimant will preserve a variety of material including tissue samples and other biological evidence.

*Id*. at 2-3.  Further, Defendant notes that "[e]ach claimant would also be required to certify...to the truth, completeness, and accuracy of his or her responses to the Fact Sheet" despite the fact that Defendant "maintains that the Fact Sheet and information obtained from the signed authorizations are not in lieu of, but rather...in addition to, claimant deposition testimony and the full range of traditional discovery tools".  *Id*. at 3.  Plaintiff claims that contrary to Defendant's assertion that "its approach to discovery will streamline the discovery process in a way that is less intrusive and time-consuming than interrogatories", "a review of the scope and breadth of information and documents sought by Defendant...[demonstrates that they are] exceedingly overbroad, instrusive and irrelevant".   *Id*. at 4.   However, Plaintiff acknowledges that "some...requests may eventually prove relevant to the claims of some claimants" and Plaintiff may "agree to obtain and produce relevant discovery", including "information about visits to medical providers, medical records, claimant efforts to find employment, and portions of claimant Social Security records".  *Id*. at 3.

A.    **Defendant's Arguments in Support of the Motion to Compel**

1.    **Individual claimants should be compelled to provide the information sought on the proposed fact sheet.**

Initially, pursuant to FED. R. CIV. P. 26(b)(1) and *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000), Defendant notes that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence".  *See* Def.'s Br. at 3.  Pursuant to *Sempier v. Johnson*, 45 F.3d 724, 734 (3d

Cir. 1995), *Farmers & Merchants Nat. Bank v. San Clemente Financial Group Securities, Inc.*, 174 F.R.D. 572, 585 (D.N.J. 1997), and *In re Wilson*, 451 F.3d 161, 164 (3d Cir. 2006), Defendant maintains that "district courts have broad discretion to manage discovery", that there "is particularly broad deference given to a magistrate judge's discovery rulings", that "courts within the Third Circuit have...recognized and permitted the use of 'fact sheets' and other forms of discovery that were used to gather information relevant to individual claims in multiple plaintiff litigation", and that "[i]t is well within the Court's discretion to order the production of the information sought in the proposed Fact Sheet". *Id*. at 4. Citing FED. R. CIV. P. 26, *Barnes Found. v. Twp. of Lower Merion*, 1996 U.S. Dist. LEXIS 16402 (E.D. Pa. 1996), *Takacs v. Union County*, 2009 U.S. Dist. LEXIS 87632 (D.N.J. 2009), *Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981), *Jones v. DeRosa*, 238 F.R.D. 101, 104 (D.N.J. 1990), and *Hickman v. Taylor*, 329 U.S. 495 (1947), Defendant argues that "[t]he precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action", that "the determination of relevance is within the discretion of the District Court", that "Courts have construed this rule liberally...creating a broad vista for discovery", that "[r]eview of all relevant evidence provides each party with a fair opportunity to present an effective case at trial", that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation and either party may compel the other to disgorge whatever facts he has in his possession", and that "the party resisting discovery has the burden of clarifying and explaining its objections to provide support therefor". *Id*. at 4-5.

Defendant argues that "the information sought on the proposed Fact Sheet is indisputably relevant to...[its] defense" given that "Plaintiff alleges that [Defendant] discriminated

against...[individual claimants] by terminating...[them] after refusing to accommodate an alleged disability". *Id*. at 5.   More specifically, Defendant contends that "information about the [individual claimants'] medical history related to their claimed disability", "[their] employment history", "their earnings", and "their communications with Defendant's agents...are [all] obviously relevant to their claims and damages". *Id*.   Therefore, Defendant requests that the "Court...order each...[individual claimant] to fill out the proposed Fact Sheet". *Id*.

    **2.**    **The information sought is reasonably calculated to lead to the discovery of admissible evidence.**

Defendant notes that "absent from...[Plaintiff's] brief is any substantive discussion of the relevant standard for deciding this Motion" under FED. R. CIV. P. 26(b)(1) and *Pearson*, 211 F.3d at 65 but that, "[u]nder this standard, the information requested is indisputably discoverable". *See* Def.'s Reply Br., dkt. entry no. 43 at 2-3.   Defendant maintains that Plaintiff "has provided no justification for failing to provide...a list of...[each individual claimant's] lawsuits since 2004[,] detailed information about each [individual] claimant's disability[,] all documents related to each [individual] claimant's employment with [Defendant,] and an acknowledgment that [each individual] claimant will preserve relevant materials" and argues that "[t]hese relevant materials should be provided as soon as possible". *Id*. at 3.

More specifically, with respect to the medical records sought, Defendant notes that "[t]he proposed Fact Sheet make[s] clear that [Defendant] only seeks authorizations for providers likely to have information about the claimant's claimed disability...limited to records related to the claimed disability". *Id*. at 3-4.   Defendant argues that "[m]edical records related to [each individual] claimant's asserted disability are clearly discoverable...[given that each individual]

claimant's entitlement to relief depends in part on [his/her] medical condition" and asserts that Plaintiff's "proposed alternative...[of] unilaterally decid[ing] what materials [Defendant] is entitled to see" is unacceptable given the adversarial nature of the legal system. *Id*. at 4. Further, Defendant maintains that "medical records related to the disability [each individual] claimant asserts required an accommodation are reasonably calculated to lead to the discovery of admissible evidence on the key issues in this case: (1) whether the [each individual] claimant had a disability; (2) whether an accommodation was required and if the accommodation was reasonable; and (3) whether [each individual] claimant suffered damages, which necessarily involved when (or whether) the [each individual] claimant was able to return to work". *Id*.

With respect to the Social Security disability records sought, Defendant argues that same "are reasonably likely to lead to discoverable evidence" because "[t]he question of whether...[each individual] claimant has applied for or received disability benefits which would require...[each individual] claimant to be unable to work is obviously relevant to the question of damages because...[each individual] claimant who is permanently unable to work cannot recover lost wages". *Id*. Further, Social Security disability records "are also relevant...[to] whether...[each individual claimant] was disabled and whether...[each individual claimant] has mitigated his or her damages". *Id*. Despite the fact that Plaintiff relies on *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806 (1999) "for the proposition that [Defendant] is not entitled to review these files", Defendant asserts that in fact this case "shows that...[Social Security disability] records are reasonably calculated to lead to the discovery of admissible evidence" given that the court held "that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of [an] earlier SSDI total disability claim...[and] must offer a

sufficient explanation". *Id*. at 4-5.

With respect to the employment records sought, Defendant maintains that this information is discoverable because "records from [each individual claimant's] post-PHCS employment will show...when they were able to return to work, what their new job duties were, and what accommodation they may have sought or needed" in addition to providing "information about [each individual] claimant's work, employee discipline, and attendance history". *Id*. at 5. Defendant argues that all of this information "may become relevant to [each individual] claimant's reasonable expectations of employment...[with Defendant]". *Id*. With respect to the basic information about education and employment history sought, Defendant maintains that this "is the kind of fundamental discovery that is routine in Federal Court" and "is obviously relevant to each claimant's 'employability', which speaks to mitigation of damages". *Id*. Defendant also argues that this information is "relevant if a claimant did not provide truthful or complete information in his or her application...[for employment with Defendant]" and "[t]he fact that claimants may have provided some form of this information...years ago...[while] not under oath...as part of their application for employment with [Defendant] does not bar [Defendant] from seeking updated, sworn information now". *Id*.

With respect to the information regarding [each individual] claimant's communications with Defendant as to his/her disability or requests for leave, Defendant maintains that this information is *"prima facie* likely to lead to the discovery of admissible evidence relevant to the question of whether [an] accommodation was requested or what was requested". *Id*. at 5-6. "[Plaintiff's] position that this information is already in the possession of [Defendant] ignores reality on several levels" given that "[Defendant] has had thousands of employees over the

11

relevant time period". *Id.* at 6.  Defendant contends that [each individual] claimant "may...have information that...[Defendant] does not have" and they "may recall important information that [Defendant's] employees do not" such that "[p]roviding names and dates of communications will allow [Defendant] to identify and communicate with current and former employees who may have additional information relevant to this case". *Id.*  Morever, "[e]ven if [Defendant] did have perfect information, ...it would still be entitled to know the basis for each [individual] claimant's assertions that leave was requested". *Id.*  For these reasons, Defendant requests that the Court order each individual claimant to complete the proposed Fact Sheet. *Id.*

     **B.**     **Plaintiff's Arguments in Opposition to the Motion**

          **1.**     **Defendant's Fact Sheet, authorizations and releases seek irrelevant information, invade the privacy rights of the claimants, and are overly intrusive, broad, duplicative and burdensome.**

Initially, Plaintiff maintains that "[t]he Federal Rules of Civil Procedure provide a sensible, ordered method for conducting discovery".  *See* Pl.'s Opp'n Br. at 4.  However, "Defendant, by its Motion, seeks to side-step that ordered method and, instead, compel a plethora of discovery in a form and manner that Defendant has unilaterally determined is useful for it to defend against the allegations raised".  *Id.*  Plaintiff contends that "Defendant's proposal flies in the face of the Federal Rules, burdens and intrudes upon the reasonable privacy expectations of...[each individual] claimant, is not tailored to the issues in this case, and is not limited to the production of relevant discovery or discovery which is likely to lead to relevant and admissible evidence".  *Id.*

          **(a)**     **Defendant has not sustained its burden of showing that the information and documents sought are relevant.**

Citing *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000), *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 256 (S.D. Ind. 2002), *Surles v. Air France*, 2001 U.S. Dist. LEXIS 15315, at *5 (S.D.N.Y. 2001), *Spina v. Our Lady of Mercy Med. Ctr.*, 2001 U.S. Dist. LEXIS 7338, at *7 (S.D.N.Y. 2001), and *Contemporary Mission, Inc., v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir. 1981), Plaintiff maintains that Defendant has failed to meet its burden of showing that the requested discovery is relevant. *Id*. at 4-5. Plaintiff argues that "[a]n unsupported, conclusory statement that the sweeping, intrusive, unlimited access to and disclosure of a wide-ranging panoply of information and documents sought here is 'obviously relevant' to [Plaintiff's] employment discrimination claims falls woefully short of satisfying Defendant's burden". *Id*. at 5. In sum, Plaintiff argues that "[w]hen viewed in the context of the central issues in this case, it is clear that the majority of discovery sought by the Motion...is not reasonably calculated to lead to the discovery of admissible evidence". *Id.*

**(b)   Defendant's requests are intrusive and harmful to the claimants.**

Citing *Bayer, AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999), *Miscellaneous Docket Matter 1 v. Miscellaneous Docket Matter 2*, 197 F.3d 922, 925 (8th Cir. 1999), *Adkins v. Sogliuzzo*, 2011 U.S. Dist. LEXIS 104816 (D.N.J. 2011), and *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351-52 (1978), Plaintiff argues that "[t]o the extent that they seek any relevant material, Defendant's requests remain so overbroad, burdensome, duplicative, and/or overly intrusive that the Motion must be denied" given that the "Third Circuit has long recognized that although broad, the right to discovery is not unlimited and may be circumscribed". *Id*. at 5-6. Pursuant to FED. R. CIV. P. 26(c), *Schmulovich v. 1161 Rt. 9 LLC*, 2007 U.S. Dist. LEXIS 59705,

at *3 (D.N.J. 2007), and *Burke v. New York City Police Department*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987), Plaintiff contends that "discovery must be circumscribed where an individual's privacy and/or confidentiality interest are implicated" and that "even relevant information must be sheltered from discovery to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". *Id*. at 6. "Defendant cannot and does not show that its need for the [requested] discovery outweighs the countervailing privacy interests at stake...or that less intrusive means of obtaining relevant information are unavailable". *Id*.

i.    **The Court should not compel each individual claimant to sign authorizations which would give Defendant unfettered access to confidential, irrelevant discovery.**

"By it Motion[,] Defendant asks the Court to compel [Plaintiff] to obtain authorizations from...[each individual] claimant which would permit defense counsel uncensored access to each [each individual] claimant's medical records, Social Security file, income tax records, and employment records". *Id*. at 6-7. Plaintiff claims that "[t]he overbreadth and potentially chilling effect of an order compelling execution of the requested releases as a condition of participation in this lawsuit cannot be overstated" and "[t]here is simply no reason to impose such a requirement in this case". *Id*. at 7. Citing *J.J.C. v. Fridell*, 165 F.R.D. 513 (D. Minn. 1995), Plaintiff notes that it "has offered to obtain those portions of [each individual] claimant's records that are shown to be relevant to the issues in this case", that "the Federal Rules of Civil Procedure require no more than that" and that the Federal Rules caution against the prejudicial effects of unnecessarily invasive discovery tactics". *Id*.

ii.    **Each category of material Defendant seeks to obtain is irrelevant, overbroad and/or intrusive.**

### (a)     Medical Records

Plaintiff notes that "[as] part if its *prima facie* case", it "has the burden of proving that each [individual] claimant is, or was at the time he or she requested an accommodation, 'disabled' within the meaning of the ADA". *Id*. Citing 29 C.F.R. § 1630.1(c)(4), 29 C.F.R. § 1630.2(j)(3)(iii), and *EEOC v. Autozone, Inc.*, 630 F.3d 635, 643-44 (7th Cir. 2010), Plaintiff maintains that "[t]his is not an arduous task that requires review of extensive medical records and/or testimony" given that "the definition of 'disability'...[is] construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA" and "should not demand extensive analysis". *Id*. at 7-8.  Here, "Defendant already has relevant medical evidence of disability for most claimants" based upon the fact that "Defendant's policies require employees who request medical leave to provide evidence of disability at the time of the request"; however, "[t]o the extent that [Plaintiff] identifies claimants who do not fall into this category, [Plaintiff] will produce relevant proof of disability status pursuant to its obligations under the ADA". *Id*. at 8.  Plaintiff contends that, "[a]t a minimum, most claimants provided a certification from their physician certifying the nature of the disability and the amount of leave needed". *Id*.  Plaintiff notes that "[a]t the time Defendant acted on each request for medical leave[,] it did not deem any additional records relevant or necessary and, therefore, to the extent that it did, Defendant is in possession of those records". *Id*.

Plaintiff claims that it "proposed that Defendant review its own existing medical and leave files and then discuss with [Plaintiff] what issues, if any, would be disputed as to each [individual] claimant" given the "unambiguous statutory mandate that the focus of the inquiry centers on whether discrimination occurred rather than whether...[each individual] claimant is

15

disabled" and the fact that "clear evidence of disability is already in the record for most claimants". *Id.* Although the parties "would...be better positioned to determine the nature and scope of additional discovery" if Plaintiff's proposal were implemented, "Defendant...refused to move forward without a completed Fact Sheet and signed authorization from each...[individual] claimant". *Id.* Plaintiff argues that "Defendant's position is completely unwarranted". *Id.* For example, "[t]hree of the twenty-five claimants identified so far requested an accommodation because they needed treatment for cancer" and, Plaintiff contends, "there can be no dispute that cancer...is a disability within the meaning of the ADA". *Id.* "Typically...each [claimant's] oncologist completed a medical certification listing the type of cancer and the amount of leave needed for the [claimant] to receive...treatment". *Id.* at 8-9. Therefore, "[p]roduction of additional medical records at this stage is duplicative, burdensome, and unnecessary to show that these claimants are disabled within the meaning of the ADA". *Id.* at 9.

"To the extent that additional medical records are required", Plaintiff reiterates that it "has offered to obtain, screen, and produce the relevant portions" and cites *J.J.C. v. Fridell*, 165 F.R.D. 513 (D. Minn. 1995) for the proposition that it "is in the best position to safeguard the privacy rights of the claimants by redacting irrelevant, confidential materials". *Id.* Although "[t]hat proposal was rejected because Defendant believes it would 'be quicker' to eliminate [Plaintiff's] review of claimant records", Plaintiff maintains that "Defendant's sudden desire to expedite discovery...does not outweigh...[each individual] claimant's right to safeguard confidential, private, and irrelevant information contained in [his/her] medical records". *Id.* Rather, pursuant to *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980), Plaintiff argues that "private confidential material in claimant medical records must be protected"

given that the "Third Circuit has made it clear that the sensitive nature of an employee's medical records places them well within the ambit of materials entitled to privacy protection". *Id*. "The claimants did not waive their right to privacy by agreeing to participate in this lawsuit" and Plaintiff asserts that its "ability to screen the records and redact or withhold irrelevant and/or confidential information is essential to safeguarding...[each individual] claimant's reasonable privacy interests". *Id*. at 9-10. Citing *Reish v. Pennsylvania State University*, 2011 U.S. Dist. LEXIS 55170, at *7-8 (M.D. Pa. 2011) and *In re Urethane Antitrust Litigation*, 261 F.R.D. 570, 573 (D. Kan. 2009), Plaintiff contends that "[o]n balance, the speculative and marginal relevance of [each individual] claimant's entire medical file is outweighed by the potential harm occasioned by the requested discovery". *Id*.

### (b)    Social Security Records

Plaintiff claims that "[t]he same privacy and relevance concerns apply with equal force to Defendant's effort to obtain...[each individual] claimant's Social Security disability files". *Id*. at 10. Noting that "Social Security disability files often contain private, medical information as well as confidential, financial information of no relevance", Plaintiff maintains that Defendant "has offered no rationale to support a finding that...[each individual] claimant's privacy interests are outweighed by Defendant's need for[,] or the relevance of[,] Social Security records". *Id*. "With no showing of relevance, Defendant's sweeping request strikes of nothing more than a fishing expedition and should be denied on this ground alone". *Id*. Referencing a contention often made by employers that "that because there is a purported inconsistency, an employee who applies for disability benefits should be estopped from pursuing an ADA claim", Plaintiff cites *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), *Bisker v. GGS*

17

*Information Services Inc.*, 342 Fed. Appx. 791 (3d Cir. 2009), and *Turner v. Hershey Chocolate USA*, 440 F.3d 604 (3d Cir. 2006) and argues that "[t]his rationale...is insufficient to compel [production] of [these] records since it is well settled that judicial estoppel does not apply to these cases". *Id*. More specifically, "[a]lthough the Court noted in *Cleveland* that there may be circumstances where a claimant should explain conflicting assertions regarding his or her ability to work, it held that filing for disability benefits and pursuing a claim of discrimination under the ADA are not mutually exclusive". *Id*. at 10-11.

### (c)      Income Tax Returns

Citing *DeMasi v. Weiss*, 669 F.2d 114, 119-20 (3d Cir. 1982), *Jackson v. Unisys, Inc.*, 2009 U.S. Dist. LEXIS 121716, at *4-5 (E.D. Pa. 2010), and *Farmers & Merchants National Bank v. San Clemente Financial Group Securities, Inc.*, 174 F.R.D. 572, 585 (D.N.J. 1997), Plaintiff maintains that "[i]ncome tax returns constitute a private, confidential communication between a taxpayer and the government" and that "[i]ntrusion into that communication has been well guarded in [the] Third Circuit". *Id*. at 11-12. "Whether tax returns are discoverable turns on whether (1) the tax returns are relevant to the subject matter of the action...and [whether] (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable" and "[t]he party seeking the discovery at issue bears the burden of establishing its relevance...while the party resisting discovery bears the burden of establishing other sources for the information". *Id*. at 11-12. Plaintiff argues that pursuant to *Wiggins v. Clementon Police Dept.*, 2009 U.S. Dist. LEXIS 66955 (D.N.J. 2009), "Defendant's motion to compel disclosure of each [individual] claimant's income tax returns from 2004 to the present must be denied" because "Defendant has failed to satisfy its burden of showing that the income

tax returns are relevant". *Id.* at 12.  However, "even if the returns were relevant", pursuant to *Farmers*, 174 F.R.D. at 585, *Blakely v. Continental Airlines*, 1997 U.S. Dist. LEXIS 22067 (D.N.J. 1997), and *Haas v. Kohl's Dept. Store*, 2009 U.S. Dist. LEXIS 57816, at *2-3 (E.D. Pa. 2009), Plaintiff notes that it "is willing to produce copies of W-2s for [each individual] claimant seeking lost wages" which is a "far less intrusive option that satisfies Defendant's need for proof of economic loss and mitigation while protecting [each individual] claimant's rights to keep other matters contained in [his/her] income tax returns confidential". *Id.*

### (d)       Employment Records

Plaintiff argues that "Defendant's effort to obtain...[each individual] claimant's employment records (including Workers' Compensation records and any and all documents related to each [individual] claimant's request for a reasonable accommodation, made to any employer, since 2004) is overbroad, unduly burdensome, completely irrelevant, invasive and likely to intimidate, embarrass, and potentially harm claimants". *Id.* at 12-13.  Plaintiff notes that "[a]lthough Defendant provides no rationale to support its request..., defense counsel indicated during the parties' discussions that the objective of this request was to determine whether any of [the] claimants had requested a reasonable accommodation from any other employers". *Id.* at 13. Citing *Warnke v. CVS Corp.*, 265 F.R.D. 64 (E.D.N.Y. 2010), Plaintiff argues that "[s]ince the issue in this case is how Defendant reacted to [each individual] claimant's request for a reasonable accommodation, whether...[each individual] claimant ever made such a request...[with] a prior or subsequent employer is completely and obviously irrelevant" and "Defendant does not provide any support for the Court to find otherwise". *Id.*

Citing *Perry v. Best Lock Corp.*, 1999 U.S. Dist. LEXIS 23601, at *2 (S.D. Ind. 1999),

*Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1510-13 (D.C. Cir. 1995), and *Premer v. Corestaff Services, L.P.*, 232 F.R.D. 692, 693 (M.D. Fla. 2005), Plaintiff notes that "[c]ourts are rightly wary of broad discovery requests of tenuous relevance" and have found that "effort[s] to obtain [a] plaintiff's subsequent employment records in order to formulate any possible after-acquired evidence defense, investigate any previous disciplinary problems, and confirm if [a] plaintiff has a penchant for bringing frivolous claims" were "fishing expeditions". *Id*. at 13-14.  Plaintiff argues that pursuant to *Warnke*, 265 F.R.D. at 66-69, *Graham*, 206 F.R.D. at 254-55, *Perry*, 1999 WL 33494858, at *3, and *Conrod v. Bank of New York*, 1998 U.S. Dist. LEXIS 11634 (S.D.N.Y. 1998), "[t]he claimants have a legitimate privacy interest in records concerning their former or subsequent employer" and "where the request for employment records will go to...[each individual] claimant's current employer, the level of intrusion and potential harm...is self-evident".  *Id*. at 14.  "Such concerns are heightened here, where[,] given their protected status under the ADA, the request itself will disclose the fact that...[each individual] claimant...[is] or...[was] disabled, thereby violating [his/her] privacy and exposing [him/her] to further discriminatory treatment".  *Id*. at 14-15.

   **2.**  **Defendant's motion to compel must be denied to the extent that it seeks to compel information already in its possession and that is therefore duplicative.**

  Plaintiff argues that FED. R. CIV. P. 26(c)(i), "which specifically guards against discovery requests which are unreasonably cumulative, duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[,] must apply here to limit some of Defendant's requests".  *Id*. at 15.  Plaintiff maintains that "[s]ince all of the claimants are [Defendant's] current or former employees, Defendant already possesses a significant amount of

information about each [individual] claimant". *Id*. Specifically, "Defendant's employment application contains the education and employment history for each employee" – both "items sought [in] Defendant's fact sheet". *Id*. "Additional information...[may be] found in employee resumes...[and] personnel files", especially given that "personnel files...frequently contain updated information" such as notification when an employee "complet[es] educational classes, attain[s] degrees or certifications, or when they move or marry". *Id*. Plaintiff contends that "[e]ven though this information is irrelevant to a determination of the issues presented in this case, Defendant has all, or at least a significant amount, of this information". *Id*.

Similarly, Plaintiff argues that "Defendant has or should have details about all of the claimants' communications with Defendant regarding...[each individual] claimant's disabilities and/or requests for leave, including the date, type, and substance of each communication". *Id*. "[S]ince Defendant bears the burden of showing that it has engaged in the interactive process with its disabled employees, the fact that it does not possess this information...is highly relevant to [Plaintiff's] claim". *Id*. However, Plaintiff asserts that "[i]n some cases, this information...too...is in the claimant files". *Id*. Separately, Plaintiff contends that "Defendant has at least some of the relevant medical information as to most or all of the claimants". *Id*. at 15-16. In sum, Plaintiff argues that Defendant's "attempt to circumvent formal discovery, bypass [Plaintiff] and obtain duplicative (and often irrelevant and intrusive) information should be denied". *Id*. at 16.

## III.   DISCUSSION

### A.   Legal Standards

#### 1.   The ADA

"The Americans with Disabilities Act prohibits employers from discriminating based upon the known physical or mental impairments of 'a qualified individual with a disability'". *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001); *see also* 42 U.S.C. § 12112. The Court notes that the ADA was "amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101, *et seq.*" and that the ADAAA and related regulations are "intended to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities, and to provide clear, strong, consistent, enforceable standards addressing discrimination". 29 C.F.R. § 1630.1(a). "To make out a *prima facie* case under the ADA, a plaintiff must establish that s/he (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an 'adverse employment decision' as a result of that disability". *Skerski*, 257 F.3d at 278; *see also Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998) (*en banc*).

With respect to establishing whether each individual claimant "has a disability" (*Id.*), the Court notes that pursuant to the "broad coverage" afforded under 29 C.F.R. § 1630.1(c)(4),

> The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the [ADAAA's] purpose of reinstating a broad scope of protection under the ADA, the definition of 'disability' in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability. The question of whether an individual meets the definition of disability under this part should not demand extensive analysis.

Further, pursuant to the definitions set forth at 29 C.F.R. § 1630.2,

...
(g) Definition of 'disability.'

(1) In general. Disability means, with respect to an individual--

(i) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(ii) A record of such an impairment; or

(iii) Being regarded as having such an impairment as described in paragraph (l) of this section . This means that the individual has been subjected to an action prohibited by the ADA as amended because of an actual or perceived impairment that is not both 'transitory and minor.'

(2) An individual may establish coverage under any one or more of these three prongs of the definition of disability, i.e., paragraphs (g)(1)(i) (the 'actual disability' prong), (g)(1)(ii) (the 'record of' prong), and/or (g)(1)(iii) (the 'regarded as' prong) of this section.

(3) Where an individual is not challenging a covered entity's failure to make reasonable accommodations and does not require a reasonable accommodation, it is generally unnecessary to proceed under the 'actual disability' or 'record of' prongs, which require a showing of an impairment that substantially limits a major life activity or a record of such an impairment. In these cases, the evaluation of coverage can be made solely under the 'regarded as' prong of the definition of disability, which does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment. An individual may choose, however, to proceed under the 'actual disability' and/or 'record of' prong regardless of whether the individual is challenging a covered entity's failure to make reasonable accommodations or requires a reasonable accommodation.

Note to paragraph (g): See § 1630.3 for exceptions to this definition.

(h) Physical or mental impairment means--

(1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs),

23

cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or

(2) Any mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

(i) Major life activities --(1) In general. Major life activities include, but are not limited to:

(i) Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and

(ii) The operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. The operation of a major bodily function includes the operation of an individual organ within a body system.

(2) In determining other examples of major life activities, the term 'major' shall not be interpreted strictly to create a demanding standard for disability. ADAAA Section 2(b)(4) (Findings and Purposes). Whether an activity is a 'major life activity' is not determined by reference to whether it is of 'central importance to daily life.'

(j) Substantially limits --

(1) Rules of construction. The following rules of construction apply when determining whether an impairment substantially limits an individual in a major life activity:

(i) The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard.

(ii) An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life

24

activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

(iii) The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis.

(iv) The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. However, in making this assessment, the term 'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA.

(v) The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis. Nothing in this paragraph is intended, however, to prohibit the presentation of scientific, medical, or statistical evidence to make such a comparison where appropriate.

(vi) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures. However, the ameliorative effects of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity.

(vii) An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.

(viii) An impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment.

(ix) The six-month 'transitory' part of the 'transitory and minor' exception to 'regarded as' coverage in § 1630.15(f) does not apply to the definition of 'disability' under paragraphs (g)(1)(i) (the 'actual disability' prong) or (g)(1)(ii) (the 'record of' prong) of this section. The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.

(2) Non-applicability to the 'regarded as' prong. Whether an individual's impairment 'substantially limits' a major life activity is not relevant to coverage under paragraph (g)(1)(iii) (the 'regarded as' prong) of this section.

(3) Predictable assessments --

(i) The principles set forth in paragraphs (j)(1)(i) through (ix) of this section are intended to provide for more generous coverage and application of the ADA's prohibition on discrimination through a framework that is predictable, consistent, and workable for all individuals and entities with rights and responsibilities under the ADA as amended.

(ii) Applying the principles set forth in paragraphs (j)(1)(i) through (ix) of this section, the individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage under paragraphs (g)(1)(i) (the 'actual disability' prong) or (g)(1)(ii) (the 'record of' prong) of this section. Given their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity. Therefore, with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward.

(iii) For example, applying the principles set forth in paragraphs (j)(1)(i) through (ix) of this section, it should easily be concluded that the following types of impairments will, at a minimum, substantially

26

limit the major life activities indicated: Deafness substantially limits hearing; blindness substantially limits seeing; an intellectual disability (formerly termed mental retardation) substantially limits brain function; partially or completely missing limbs or mobility impairments requiring the use of a wheelchair substantially limit musculoskeletal function; autism substantially limits brain function; cancer substantially limits normal cell growth; cerebral palsy substantially limits brain function; diabetes substantially limits endocrine function; epilepsy substantially limits neurological function; Human Immunodeficiency Virus (HIV) infection substantially limits immune function; multiple sclerosis substantially limits neurological function; muscular dystrophy substantially limits neurological function; and major depressive disorder, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, and schizophrenia substantially limit brain function. The types of impairments described in this section may substantially limit additional major life activities not explicitly listed above.

(4) Condition, manner, or duration --

(i) At all times taking into account the principles in paragraphs (j)(1)(i) through (ix) of this section, in determining whether an individual is substantially limited in a major life activity, it may be useful in appropriate cases to consider, as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity.

(ii) Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the

operation of a major bodily function. In addition, the non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity.

(iii) In determining whether an individual has a disability under the 'actual disability' or 'record of' prongs of the definition of disability, the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population.

(iv) Given the rules of construction set forth in paragraphs (j)(1)(i) through (ix) of this section, it may often be unnecessary to conduct an analysis involving most or all of these types of facts. This is particularly true with respect to impairments such as those described in paragraph (j)(3)(iii) of this section, which by their inherent nature should be easily found to impose a substantial limitation on a major life activity, and for which the individualized assessment should be particularly simple and straightforward.

With respect to establishing whether each individual claimant "is a qualified individual" (*Skerski*, 257 F.3d at 278), "[u]nder the ADA...a 'qualified individual' is one 'who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires'". *Id*.; *see also* 42 U.S.C. § 12111(8). "To satisfy this requirement, a plaintiff must first demonstrate that s/he 'satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such

individual holds or desires'". *Id.*; *see also Deane*, 142 F.3d at 145.  "Second, a plaintiff must establish that s/he, 'with or without reasonable accommodation, can perform the essential functions of the position held or sought'".  *Id*.  In order to satisfy this second prong, the Court must conduct "another two-party inquiry".  *Id*.  "First, [the court] must determine whether [the plaintiff] can perform the essential functions of his[/her] job without accommodation".  *Id*.  "If this is the case, [the court] will consider him[/her] a 'qualified individual,' thereby satisfying the second part of a *prima facie* case under the ADA".  *Id*.  "If [the plaintiff] cannot perform the essential functions of his[/her] job...without accommodation, ...[the court] must inquire whether he[/she] can perform those same functions with a reasonable accommodation".  *Id*.  "[I]f he[/she] can do so, he[/she] will be considered a 'qualified individual' under the ADA".  *Id.*; *see also Deane*, 142 F.3d at 146.

Finally, with respect to enforcement of the ADA and related damages, the Court notes that pursuant to 42 U.S.C. § 12117,

> (a) Powers, remedies, and procedures.  The powers, remedies and procedures set forth in sections 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9) shall be the powers, remedies, and procedures this title provides to the [Equal Employment Opportunity] Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this Act, or regulations promulgated under section 106 [42 U.S.C. § 12116] concerning employment.

Under § 706, the EEOC may sue on behalf of one or more persons aggrieved by an unlawful employment practice.  42 U.S.C. § 2000e-5(f)(1).  Under § 707, the EEOC may investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission.  *Id*. at § 2000e-6(a)-(e).

"This authority was transferred, effective March 24, 1974, from the Department of Justice

("DOJ") to the EEOC and must be carried out in accordance with subsection (e) of Section 707".

*EEOC v. Freeman*, 2010 U.S. Dist. LEXIS 41336, at *9-10 (D. Md. 2010); *see also* 42 U.S.C. §

2000e-6(c); *Gen. Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318, 327-28 (1980).  Pursuant to

42 U.S.C. § 2000e-5,

> (g) Injunctions; affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders.
>
> > (1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.
> >
> > (2)(A) No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 704(a) [42 USCS § 2000e-3(a)].
> >
> > (B) On a claim in which an individual proves a violation under section 703(m) [42 USCS § 2000e-2(m)] and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 703(m) § 42 USCS § 2000e-2(m)]; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

...

(k) Attorney's fee, liability of Commission and United States for costs. In any action or proceeding under this title [42 USCS §§ 2000e et seq.] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

## 2.    Discovery

Pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence". *See also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). Importantly, pursuant to FED. R. CIV. P. 26(b)(2)(C), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i)     the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii)   the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the

31

> amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Further, "the Court has a responsibility to protect privacy and confidentiality interests" and "has authority to fashion a set of limitations that allow as much relevant material to be discovered as possible...while preventing unnecessary intrusions into legitimate interests thatmay be harmed by the discovery of material sought". *Schmulovich v. 1161 Rt. 9 LLC*, 2007 U.S. Dist. LEXIS 59705, at *3-4 (D.N.J. 2007); *see also Pearson*, 211 F.3d at 65; Fed. R. Civ. P. 26(c).

The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. 1996). Importantly, "[c]ourts have construed this rule liberally, creating a broad vista for discovery". *Takacs v. Union County*, 2009 WL 3048471, at *1 (D.N.J. 2009)(*citing Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Evans v. Employee Benefit Plan*, 2006 WL 1644818, at *4 (D.N.J. 2006); *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006); *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 560 (D.N.J. 1994); *Glenz v. Sharp Electronic Corp.*, 2010 U.S. Dist. LEXIS 69332, at *2-3 (D.N.J. 2010). "Review of all relevant evidence provides each party with a fair opportunity to present an effective case at trial". *Jones*, 238 F.R.D. at 163; *see also Caver*, 192 F.R.D. at 159; *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation...[and] either party may compel the other to disgorge whatever facts he has in his possession". *Hickman*

*v. Taylor*, 329 U.S. 495, 507 (1947); *see also Unicasa Marketing Group, LLC v. Spinelli*, 2007 U.S. Dist. LEXIS 59704, at *6-7 (D.N.J. 2007); *Kopacz v. Delaware River and Bay Authority*, 225 F.R.D. 494, 497 (D.N.J. 2004).

Although Plaintiff's allegations are related to the ADA, the Court notes and finds instructive the fact that a broad vista for permissible discovery "holds especially true in Title VII cases, where courts have been cautioned not to impose unnecessary limitations on discovery". *Harris v. Public Serv. Elec. & Gas Co.*, 2007 U.S. Dist. LEXIS 5412, at *5-6 (D.N.J. 2007); *see also Kresefsky v. Panasonic Commc'n and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d. Cir. 1995), *cert. denied*, 515 U.S. 1159 (1995); *Milner v. National School of Health Technology*, 73 F.R.D. 628, 632 (E.D. Pa. 1977); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975); *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1972). Thus, "to the extent that...[a party seeks to] rely upon a claim of lack of relevance, [that party] must satisfy the court that the marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure, particularly in actions under Title VII". *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987).

"Whether certain documents are relevant is viewed in light of the allegations of the complaint, not as to evidentiary admissibility". *Hickman*, 329 U.S. at 507; *see also Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987). "The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence". *Caver*, 192 F.R.D. at 159; *see also Nestle Foods*, 135 F.R.D. at 105. However, "the party resisting discovery has the burden of clarifying and explaining its objections

to provide support therefor". *Tele-Radio*, 92 F.R.D. at 375; *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (E.D. Pa. 1979); *Nestle Foods*, 135 F.R.D. at 104-105.  More specifically, "[t]he party resisting production of discovery bears the burden of establishing lack of relevancy or undue burden", "must demonstrate to the Court that the requested documents either do not come within the broad scope of relevance as defined in FED. R. CIV. P. 26(b)(1) or else that they are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure", and "must do more than argue that to compile and produce [documents] would be burdensome".  *Guiterrez v. Johnson & Johnson, Inc.*, 2002 U.S. Dist. LEXIS 15418, at *22-23 (D.N.J. 2002); *see also Flora v. Hamilton*, 81 F.R.D. 576 (M.D.N.C 1978); *Burke*, 115 F.R.D. at 224.  "[A] discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, the District Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery". *Takacs*, 2009 WL 3048471, at *1; *see also Bayer AG v. Betachem, Inc*., 173 F.3d 188, 191 (3d Cir. 1999).  "The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry".  *Takacs*, 2009 WL 3048471, at *1(*citing Bowers v. National Collegiate Athletic Assoc.*, 2008 WL 1757929, at *4 (D.N.J. 2008)); *see also Leksi, Inc. v. Federal Ins. Co*., 129 F.R.D. 99, 105 (D.N.J. 1989); *Public Service Group, Inc. v. Philadelphia Elec. Co*., 130 F.R.D. 543, 551 (D.N.J. 1990).

34

(a)      **Authorizations**

The Court notes that pursuant to FED. R. CIV. P. 26(b)(1) and FED. R. CIV. P. 34, "[r]equests for authorizations for the release of medical records can be properly ordered...but authorizations are not mandated". *J.J.C. v. Fridell*, 165 F.R.D. 513, 517 (D. Minn. 1995). Rather "[i]t is necessary to balance a plaintiff['s] right to privacy against a defendant's right to a fair trial in a suit for mental or emotional harm". *Id*.; see also Lowe v. Philadelphia Newspapers, Inc., 101 F.R.D. 296, 298 (E.D. Pa. 1983).

(b)      **Medical Records**

The Court notes that "[t]he assessment of an impairment under the ADA is a highly individualized examination that considers the facts of each case independently in light of the statutory and regulatory language". *EEOC v. Autozone, Inc.*, 630 F.3d 635, 643-44 (7th Cir. 2010); *see also Kampmier v. Emeritus Corp.*, 472 F.3d 930, 938 (7th Cir. 2007). While "[n]o language in the ADA or implementing regulations states that medical testimony is required", "it is insufficient for individuals attempting to prove disability status to merely submit evidence of a medical diagnosis of an impairment". *Id*.; *see also Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 198 (2002); *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999); *Haynes v. Williams*, 392 F.3d 478, 482 (D.C. Cir. 2004). Instead, "the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial". *Id*. at 644. The Court notes that "[t]here can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection". *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 577 (3d Cir. 1980). "It has been

recognized in various contexts that medical records and information stand on a different plane than other relevant material" as demonstrated by the fact that, when comparing FED. R. CIV. P. 35 with FED. R. CIV. P. 26(b), it is clear that "the Federal Rules of Civil Procedure impose a higher burden for discovery of reports of the physical and mental condition of a party or other person than for discovery generally". *Id*. However, "[i]n an action under the ADA, a plaintiff's medical history is relevant in its entirety" because "[i]t is impossible to answer the most basic questions, such as whether the plaintiff was generally foreclosed from similar employment by reason of a major life activity impairment, or otherwise qualified given a reasonable accommodation, or what a reasonable accommodation would have been, without full and complete access to the plaintiff's medical records". *Butler v. Burroughs Wellcome, Inc.*, 920 F. Supp. 90, 92 (E.D.N.C. 1996). "And since a defendant is entitled to defend the ADA action by claiming that plaintiff's inability to work without accommodation is the result of something other than the claimed disability, discovery along such lines must also be permitted". *Id*. "Elements of a claim under the ADA touch upon the most private and intimate details of a plaintiff's life" and "ADA plaintiffs, like plaintiffs in an action for medical malpractice, waive all privileges and privacy interests related to their claim by virtue of filing the complaint". *Id*.

### (c)      Social Security Records

The Court notes that "[t]he Social Security Act ("SSA") and the ADA both help individuals with disabilities, but in different ways". *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999). While the "SSA provides monetary benefits to every insured individual who 'is under a disability'" (*Id*.; *see also* 42 U.S.C. § 423(a)(1)), "[t]he ADA seeks to eliminate unwarranted discrimination against disabled individuals in order both to guarantee those

individuals equal opportunity and to provide the Nation with the benefit of their consequently increased productivity" (*Id*.; *see also* 42 U.S.C. §§ 12101(a)(8), (9)).  "[D]espite the appearance of conflict that arises from the language of the two statutes, ...claims...[under the SSA and the ADA] do not inherently conflict to the point where courts should apply a special negative presumption" that is "sufficient to judicially estop...[a] later representation...[by an ADA plaintiff] that...for the time in question, with reasonable accommodation, [he/]she could perform the essential functions of her job" after he/she previously represented "to the SSA that [he/]she was totally disabled".  *Id*. at 802-05.  However, "in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim" such that "a plaintiff's sworn assertion in an application for disability benefits that she is...'unable to work' will appear to negate an essential element of her ADA case...if she does not offer a sufficient explanation".  *Id*. at 806.  Thus, "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of...[an] earlier SSDI total disability claim" but, rather, "must proffer a sufficient explanation".  Further, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity".  *Id*.; *see also Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991).   The Court notes that "[a]lthough...[most] cases...involve purely factual contradictions..., a similar insistence upon explanation is warranted...where the conflict involves a legal conclusion" and "must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job...with or without 'reasonable

accommodation'".  *Id.* at 807.

**(d)  Income Tax Records**

The Court notes that "public policy favors the nondisclosure of income tax returns".

*Jackson v. Unisys, Inc.*, 2009 U.S. Dist. LEXIS 121716, at *4-5 (E.D. Pa. 2010); *see also*

*DeMasi v. Weiss*, 669 F.2d 114, 119 (3d Cir. 1982).  "An individual's privacy interest in his tax

returns must be weighed against factors including the opposing party's need for the information,

its materiality, and its relevance".  *Id.*; *see also DeMasi*, 669 F.2d at 120.  "Whether tax returns

are discoverable turns on whether (1) the tax returns are relevant to the subject matter of the

action...and (2)...a compelling need for the returns because the information contained therein is

not otherwise readily obtainable".  *Id.*; *see also In re Sunrise Secs. Litig.*, 130 F.R.D. 560, 578

(E.D. Pa. 1989); *Farmers & Merchants Nat'l Bank v. San Clemente Fin. Group Sec.*, 174 F.R.D.

572, 585 (D.N.J. 1997).  "The party seeking the discovery at issue bears the burden of

establishing its relevance...while the party resisting discovery bears the burden of establishing

other sources for the information".  *Id.*; *see also In re Sunrise*, 130 F.R.D. at 578.  However,

"[w]here the taxpayer has placed this financial information in dispute, the tax returns may

contain relevant information" and "[t]he probative value of such information must be weighed

against the policy of confidentiality of tax return information...taking into account the alternative

sources from which reliable financial information may be obtained".  *Farmers & Merchants*, 174

F.R.D. at 585; *see also DeMasi*, 669 F.2d at 119; *Fort Wash. Resources v. Tannen*, 153 F.R.D.

78, 80 (E.D. Pa. 1994); *Troglione v. McIntyre Aviation, Inc.*, 60 F.R.D. 511 (W.D. Pa. 1973);

*Maldonado v. St. Croix Discount, Inc.*, 77 F.R.D. 501 (D.V.I. 1978).  "Good cause for the

production of income tax returns is not shown when the movant has the information sought or

38

can obtain it with little difficulty through other methods".  *Blakey v. Continental Airlines*, 1997 U.S. Dist. LEXIS 22067, at *8-9 (D.N.J. 1997); *see also Ullmann v. Hartford Fire Ins. Co.*, 87 N.J. Super. 409, 415 (N.J. Super. Ct. App. Div. 1965).

### (e)    Employment Records

The Court notes that individuals have "a legitimate privacy interest in information regarding [their] subsequent employment".  *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010); *see also Mirkin v. Winston Res., LLC*, 2008 U.S. Dist. LEXIS 91492, at *1-2 (S.D.N.Y. 2008).  "[C]ourts...have recognized that because of the direct negative effect that disclosures of disputes with past employers can have on present employment, subpoenas in this context, if warranted at all, should be used only as a last resort".  *Id*. at 69; *see also Conrod v. Bank of New York*, 1998 U.S. Dist. LEXIS 11634, at *4-5 (S.D.N.Y. 1998); *Gambale v. Deutsche Bank AG*, 2003 U.S. Dist. LEXIS 27412, at *5 (S.D.N.Y. 2003); *Mirkin*, 2008 U.S. Dist. LEXIS 91492.  "If filing what...[appears to be] a fairly routine case alleging individual employment discrimination opens up the prospect of discovery directed at all previous, current, and prospective employers, there is a serious risk that such discovery can become an instrument of delay or oppression".  *Perry v. Best Lock Corp.*, 1999 U.S. Dist. LEXIS 23601, at *5-6 (S.D. Ind. 1999).  "The broad scope of the 'after-acquired' evidence defense was not intended to be an invitation to pursue discovery for the sole purpose of finding some basis for establishing such a defense".  *Id*.; *see also Premer v. Corestaff Servs., L.P.*, 232 F.R.D. 692, 693 (M.D. Fla. 2005).  However, "[t]he concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims...is not an insubstantial one" although "the authority of the courts to award attorney's fees...and...to invoke the provisions of

Rule 11 of the Federal Rules of Civil Procedure will deter most abuses". *Id.* (*quoting McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 363 (1995). Further, "[t]he district court's power under Rule 26(b)(2) provides another mechanism for avoiding such abuses". *Id.*

The Court notes that a plaintiff may have "a legitimate concern that a subpoena sent to her current employer under the guise of a discovery request could be a tool for harassment and result in difficulties in her new job" such that in order "to overcome this legitimate concern", a defendant "must present independent evidence that provides a reasonable basis for it to believe that [a plaintiff] has filed complaints, grievances, lawsuits, or charges relating to her employment with...[other employers]". *Graham v. Casey's Gen. Stores, Inc.*, 206 F.R.D. 251, 256 (S.D. Ind. 2002). Similarly, "the potential burdens of...[this type of discovery] are also substantial in terms of broadcasting to a large group of businesses that [the defendant] view [plaintiff] as an untrustworthy troublemaker". *Perry*, 1999 U.S. Dist. LEXIS 23601, at *9.

## B.   Defendant's Motion

Initially, the Court notes that a Discovery Confidentiality Order, negotiated and agreed to by the Parties, was entered on May 19, 2011. *See* dkt. entry no. 19. The Court also notes that it has fully reviewed the Fact Sheet at issue in the instant Motion (*see* Def.'s Decl. of DelDuca, dkt. entry no. 35-2 at Ex. C) and that "methods of discovery may be used in any sequence" such that "discovery by one party does not require any other party to delay its discovery" (FED. R. CIV. P. 26(d)(2)). Finally, the Court notes that although Plaintiff acknowledges that "some of the requests may eventually prove relevant to the claims of some claimants" and states that it "may agree to obtain and produce relevant discovery", presently it is generally unwilling to have each individual claimant complete the Fact Sheet. *See* Pl.'s Opp'n Br. at 3, n.4. Rather, "Plaintiff has

agreed to provide only the following information for each claimant":

> -the claimant's name, description of disability, and relevant Bates number from Defendant's own document production;
>
> -portions of claimant medical records that...[Plaintiff] determines in its own discretion are relevant to the issues in this case; and
>
> -copies of W-2s for claimants seeking lost wages.

*See* Def.'s Reply Br. at 2.

With respect to medical records and authorizations, Defendant has clarified that it "only seeks authorizations for providers likely to have information about [each individual] claimant's claimed disability" and that its "request for medical records is limited to records related to the claimed disability...and no other medical conditions".  *See* Def.'s Reply Br. at 3-4.  While it is true that the ADAAA has implemented a broad interpretation for the definition of "disability" (29 C.F.R. § 1630.1(c)(4)), Plaintiff's burden in this matter is more expansive than simply establishing that each individual claimant had a "disability (*see Skerski*, 257 F.3d at 278) and Defendant is "entitled to defend...[this] ADA action by claiming that...[each individual claimant's] inability to work without accommodation is the result of something other than the claimed disability" (*Butler*, 920 F. Supp. at 92).  Based upon the elements necessary to make out a *prima facie* case under the ADA (*see Skerski*, 257 F.3d at 278), and given that "[i]n an action under the ADA, a plaintiff's medical history is relevant in its entirety...[because] [i]t is impossible to answer the most basic questions...such as whether the plaintiff was generally foreclosed from similar employment by reason of a major life activity impairment, or otherwise qualified given a reasonable accommodation, or what a reasonable accommodation would have been, without full and complete access to the plaintiff's medical records" (*Butler*, 920 F. Supp. at

92), the Court finds the inquiries made and information sought concerning the claimants' medical history to be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and not unduly burdensome (*see* FED. R. CIV. P. 26). Plaintiff is directed to have each individual claimant complete the Fact Sheet with respect to information related to medical records and authorizations consistent with the limitations stated by Defendant. *See* Def.'s Reply Br. at 3-4. While the Court appreciates the privacy concerns raised by Plaintiff, the Court is satisfied that same will be protected given that any records or information produced by each individual claimant or received by Defendant will be subject to the Discovery Confidentiality Order. Further, the Court makes no finding herein with respect to the ultimate admissibility of any medical record or information contained therein. FED. R. CIV. P. 26(b)(1); *see also Pearson*, 211 F.3d at 65.

With respect to Social Security records and authorizations, while it is true that there is no inherent conflict between the language and/or claims under the SSA and the ADA such that judicial estoppel should automatically apply in instances where an ADA plaintiff has previously represented to the SSA that he or she was totally disabled (*Cleveland*, 526 U.S. at 802-05), "in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim" absent "a sufficient explanation" (*Id*. at 806-07). Given that Defendant is entitled to defend this ADA action by examining each individual claimant's SSA records in order to determine whether an explanation regarding a previous representation of total disability may be necessary and in order to appropriately assess each individual claimant's damages (*see* Def.'s Reply Br. at 4-5), the Court finds the inquiries made and information sought concerning the claimants' Social Security history to be relevant and/or reasonably calculated to lead to the discovery of admissible evidence

and not unduly burdensome (*see* FED. R. CIV. P. 26).  Plaintiff is directed to have each individual claimant complete the Fact Sheet with respect to information related to Social Security records and authorizations.  While the Court appreciates the privacy concerns raised by Plaintiff, the Court is satisfied that same will be protected given that any records or information produced by each individual claimant or received by Defendant will be subject to the Discovery Confidentiality Order.  Further, the Court makes no finding herein with respect to the ultimate admissibility of any Social Security record or information contained therein.  FED. R. CIV. P. 26(b)(1); *see also Pearson*, 211 F.3d at 65.

With respect to income tax records, Plaintiff has clarified that it is "willing to produce copies of W-2s for claimants seeking lost wages" (Pl.'s Opp'n Br. at 12) and Defendant has agreed that "[if]...W-2s for [each individual] claimant are...provided promptly...[it] will withdraw...its request for authorization to acquire tax returns...though it reserves the right to seek tax returns if they are required in particular instances" (Def.'s Reply Br. at 2).  Based upon the fact that "public policy favors the nondisclosure of income tax returns" (*Jackson*, 2009 U.S. Dist. LEXIS 121716, at *4-5) and the relevant factors to be considered when a party seeks to compel disclosure of same (*Id*.), and given that Defendant "has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence" (*Caver*, 192 F.R.D. at 159), the Court finds that Defendant has failed to sustain its burden at this time with respect to the disclosure of income tax records and denies this aspect of the Motion without prejudice.  However, based upon the representation of Plaintiff's counsel, Plaintiff is directed to have each individual claimant who is seeking lost wages to produce W-2s. While the Court appreciates the privacy concerns raised by Plaintiff, the Court is satisfied that

same will be protected given the W-2s will be subject to the Discovery Confidentiality Order. Further, the Court makes no finding herein with respect to the ultimate admissibility of any W-2 or information contained therein.  FED. R. CIV. P. 26(b)(1); *see also Pearson*, 211 F.3d at 65.

 With respect to employment records and authorizations, the Court acknowledges that individuals have "a legitimate privacy interest in information regarding [their] subsequent employment" (*Warnke*, 265 F.R.D. at 66) and that Defendant "must present independent evidence that provides a reasonable basis for it to believe that...[each individual claimant] has filed complaints, grievances, lawsuits, or charges relating to her employment with...[other employers]" (*Graham*, 206 F.R.D. at 256).  However, with respect to each individual claimant's provision of a basic employment and education history and provision of information related to communications with Defendant regarding his or her disability or requests for leave (together with copies of any written communications or related documents), while the Court appreciates the privacy concerns raised by Plaintiff, the Court is satisfied that same will be protected by the terms of the Discovery Confidentiality Order and given that neither past nor present employers of each individual claimant need to be contacted in order for this information to be provided.  The Court is also satisfied that completion of the Fact Sheet, and production where applicable, as to these topics is less burdensome and more efficient than serving typical interrogatories and/or requests for production of documents on each individual claimant.  Therefore, the Court finds that although Defendant has failed to sustain its burden with respect to obtaining authorizations for the disclosure of employment records (*Warnke*, 265 F.R.D. at 66; *see also Graham*, 206 F.R.D. at 256), Defendant has sufficiently demonstrated that each individual claimant's employment and education history and information related to communications with Defendant

44

regarding their disability or requests for leave (together with copies of any written communications or related documents) (*see* Def.'s Reply Br. at 5-6) are relevant and/or reasonably calculated to lead to the discovery of admissible evidence and not unduly burdensome (*Caver*, 192 F.R.D. at 159; *see also* FED. R. CIV. P. 26).   Therefore, Plaintiff is directed to have each individual claimant complete the Fact Sheet with respect to information related to his or her employment and education history and with respect to communications with Defendant regarding their disability or requests for leave (together with copies of any written communications or related documents) under oath.   The Court makes no finding herein with respect to the ultimate admissibility of any information contained therein.   FED. R. CIV. P. 26(b)(1); *see also Pearson*, 211 F.3d at 65.   Further, with respect to employment records and authorizations related to each individual claimant's past and present employers, the Court denies Defendant's application without prejudice and will entertain an appropriate application from Defendant in this regard upon the presentation of appropriate evidence and legal support.

With respect to the balance of Defendant's Motion, the Court finds that Defendant has sustained it burden of demonstrating that the remainder of the inquiries made, and information requested, within the Fact Sheet to be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and not unduly burdensome.   *See Caver*, 192 F.R.D. at 159; *see also* FED. R. CIV. P. 26.   Given that courts within the Third Circuit have recognized and permitted the use of "fact sheets" to gather information relevant to individual claims in multiple plaintiff litigation (*In re Wilson*, 451 F.3d 161, 164 (3d Cir. 2006)), the Court finds that utilization of the Fact Sheet under the circumstances present in this matter to be less burdensome and more efficient than the typical process of serving interrogatories and requests for production

on each individual claimant.  Again, although the Court appreciates the privacy concerns raised by Plaintiff, the Court is satisfied that same will be protected given that any information provided or documents produced will be subject to the Discovery Confidentiality Order.

## IV.    CONCLUSION AND ORDER

The Court having considered the papers submitted and the opposition thereto, and for the reasons set forth above;

**IT IS** on this 9th day of May, 2012,

**ORDERED** that Defendant's Motion for an Order compelling Plaintiff to require individual claimants it represents to fill out the Fact Sheet [dkt. entry. no. 35] is **GRANTED** in part and **DENIED** in part consistent with the findings set forth above; and it is further

**ORDERED** that Defendant shall serve Plaintiff with a revised Fact Sheet that is consistent with the findings set forth above by **May 16, 2012**; and it is further

**ORDERED** that for individual claimants already identified, Plaintiff shall produce completed Fact Sheets (as revised) and W-2s for each, as set forth above, by **June 18, 2011**; and it is further

**ORDERED** that for individual claimants not yet identified, Plaintiff shall produce completed Fact Sheets (as revised) and W-2s for each, as set forth above, as within thirty (30) days after identification; and it is further

**ORDERED** that a telephone status conference, to be initiated by defense counsel, has been scheduled for **June 27, 2012** at **10:30 p.m.**

s/ <i>Douglas E. Arpert</i>

**DOUGLAS E. ARPERT**

**UNITED STATES MAGISTRATE JUDGE**